[Civil No. 4426. Filed March 9, 1942.]

[123 Pac. (2d) 163.]

AMERICAN SMELTING AND REFINING COMPANY, a Corporation, Petitioner, v. THE INDUSTRIAL COMMISSION OF ARIZONA, and L. C. HOLMES, LYNN LOCKHART and E. T. HOUSTON, Commissioners and Members Thereof, and CHARLES C. MOSS, Respondents.

Mr. Ben C. Hill, for Petitioner.

Mr. Rouland W. Hill and Mr. Howard A. Twitty, for Respondent Commission.

Mr. Charles C. Moss, *in Propria Persona.*

LOCKWOOD, C. J.—This matter comes before us on *certiorari* from an award of The Industrial Commission of Arizona, called the commission, granting compensation to one Charles C. Moss, petitioner, for an injury resulting from an accident arising out of and in the due course of his employment by American Smelting and Refining Company, a corporation, respondent.

The admitted facts show the following situation: Petitioner was working for respondent in a mine near Patagonia, Arizona, and on July 12, 1940, while in the performance of his duties as a miner, a large amount of rock and muck accidentally fell upon his shoulders, neck and back, bruising the shoulders and neck and causing a gash in the back of the right hand which required several stitches to close. Immediately after the accident a report was made thereof, showing the foregoing facts, and petitioner was treated by Dr. W. L. Minear, remaining away from work for four days. He then worked until July 29, when he laid off until August 5, when he resumed his work, but by August 7 found the pain to the back of his neck and shoulders so great that he could not continue. He was then treated by Dr. Z. B. Noon until about August 17 or 18 when, according to petitioner, his left arm suddenly became paralyzed. His condition continued to grow worse until at the time of the hearing before the

commission his left shoulder and arm were practically paralyzed.

The commission, on May 7, 1941, made the following findings and award:

## "FINDINGS

"1. That the above-named applicant, while employed in the State of Arizona by the above-named defendant employer, who was insured against liability for compensation under said law by the above-named defendant insurance carrier, sustained an injury by accident arising out of and in the course of his said employment on July 12, 1940, which injury caused temporary disability entitling said applicant to compensation therefor in the total sum of $818.55 of which $812.70 has been paid.

"2. Said injury also caused a permanent partial disability consisting of 25% of a total permanent disability entitling said applicant to compensation therefor in the sum of $16.45 monthly during the life of the applicant.

"3. That it appears to the best interests of said applicant that said compensation for permanent partial disability be commuted to its fair present value and paid in the lump sum of $3,266.28.

## "AWARD

"Award is hereby made payable to said applicant by the above-named defendant insurance carrier as follows:

"1. The sum of $3,272.13, payable forthwith."

and after the usual motion for rehearing was denied, the matter was brought before us.

It is agreed that the condition of petitioner at the time of the award was such that if it is compensable at all, he is entitled to the award set forth herein. But it is contended most strenuously that this admitted condition is not, under the Workmen's Compensation Act, Code 1939, section 56–901 et seq., one which entitles him to compensation. It is the position

of the commission and of petitioner that the paralytic condition which admittedly exists is a neurosis resulting directly from an injury received in the aforesaid accident. It is the contention of respondent that his condition, while real and in no sense the result of malingering, is one of functional paralysis caused by an anxiety neurosis induced by the accident alone and not by the injury, and that under our law such a condition is not compensable.

The unanimous conclusion of all the physicians who examined petitioner was that the paralytic condition was functional, and not organic, and was "suggested by his accident of July 12, 1940."

It is claimed by respondent that this is a specific statement that the injury had no connection with the admitted neurosis, but that the latter was an anxiety neurosis resulting solely from the accident itself.

It is urged by the commission and by petitioner that the physicians were not familiar with the technical legal interpretation of the word "accident" as found in our compensation law, and used the word merely in a colloquial sense of meaning both the accident and the injury resulting therefrom on July 12th.

After a careful examination of the record, including all the reports of the various physicians, we think the commission was justified in finding, as it must have, that it was more probable that in using the word "accident" the physicians referred to the entire picture of the situation as it appeared on July 12th rather than to the technical accident alone, excluding the admitted traumatic injury resulting therefrom.

With this presumed finding to guide us, let us examine the entire record and determine whether it reasonably supports the contention of the commission as to the nature and cause of petitioner's condition. All the parties agree that it is a posttraumatic neurosis

of some kind. A neurosis is a disease. *Phelps Dodge Corp.* v. *Industrial Commission of Arizona and Eads,* 46 Ariz. 162, 49 Pac. (2d) 391.

Many medical authorities divide posttraumatic neurosis into three general classes: posttraumatic neurasthenia, posttraumatic anxiety neurosis, and posttraumatic hysteria neurosis. Maloy Nervous and Mental Diseases, p. 313. The symptoms in the neuroses are generally subjective in their nature, and while some of the symptoms of each of these three classes are similar, yet there are others which are distinctive enough to justify the classification.

■■ Upon consideration of the testimony of all the physicians, together with that of the petitioner, we think the commission was fully justified in believing that this condition was what is known as posttraumatic hysteria, rather than anxiety neurosis, and this former class of neurosis very commonly, if not usually, arises from shock resulting from some accident. Nervous and Mental Diseases, *supra,* p. 307.

In view of the history of the case, we think the natural, if not the irresistible, conclusion is that petitioner's condition was a posttraumatic hysteria neurosis resulting from a shock caused by the accident of July 12th. Does this show a "disease . . . resulting from the injury"? Section 56–930, Arizona Code 1939. The answer depends upon whether shock, in the medical sense of the term, is itself legally an injury. The English courts have had the question under consideration several times, and they have always held that a nervous shock resulting from an accident is just as much an injury as any muscular or bodily consequences which are objectively discernible. *Eaves* v. *Blaenclydach Colliery Company, Limited,* Butterworth's Workmen's Compensation Cases, vol. II (N. S.) 329; *Yates* v. *South Kirby, Featherstone, and Hemsworth Collieries, Ltd.,* Butterworth's Workmen's

Compensation Cases, vol. III (N. S.) 418. This ruling is followed in many American cases where a similar question has arisen. *Peterson* v. *Department of Labor and Industries,* 178 Wash. 15, 33 Pac. (2d) 650; *Sigley* v. *Marathon Razor Blade Co.,* 111 N. J. L. 25, 166 Atl. 518; *Rialto Lead & Zinc Co.* v. *State Industrial Comm.,* 112 Okl. 101, 240 Pac. 96, 44 A. L. R. 494; *In re Hunnewell,* 220 Mass. 351, 107 N. E. 934.

We think these cases are justified in reason, and therefore hold that a nervous shock caused by an accident arising out of and in the due course of employment is a compensable "injury" within the meaning of our statute. Since a shock is a compensable injury, and neurosis is a disease, a hysteria neurosis caused by a shock is a "disease . . . resulting from the injury." And on the record in the present case the commission was justified in finding that petitioner's condition was due to a disease resulting from an injury caused by an accident arising out of and in the due course of his employment.

Respondent cites in support of its contention the case of *Pierce* v. *Phelps Dodge Corp.,* 42 Ariz. 436, 26 Pac. (2d) 1017, 1021, followed by *Phelps Dodge Corp.* v. *Industrial Commission of Arizona and Eads, supra.* In the Pierce case we pointed out the difference between an "accident" and an "injury," and stated the general rule when compensation was claimed for a disease, in the following language:

"Our statute in section 1420, Revised Code 1928, construes for certain purposes the phrase 'personal injury by accident arising out of, and in the course of the employment,' and it is specifically stated that it 'does not include a disease unless resulting from the injury.' It is obvious from this that when compensation is awarded in any manner for a disease there must have been (a) an unexpected event which was (b) the cause of an injury to the person, (c) which injury must have produced or aggravated a disease.

Nor can the disease itself be the injury produced by the unexpected event, since the statute specifically says it must be the *result* of the injury.''

In that case the facts showed there was no accident whatever, and we held that since no accident appeared there could be no compensation.

In the Eads case there was an explosion of a missed hole in a mine which caused a large amount of poisonous gas to be exuded, and Eads was compelled to run for some distance through the gas in order to reach fresh air. He suffered temporary pulmonary disorders as a result of his experience, and after these temporary effects had passed away claimed compensation for temporary disability. The medical testimony may be summarized in the following quotation from the opinion:

'' . . . The doctors also pretty well agreed that respondent's trouble was neurosis, and that such condition was caused by the accident. None of the doctors, however, would say that the neurosis was caused by an injury received by respondent in the accident. . . . ''

We referred to the Pierce case, and said:

'' . . . If the commission had found that respondent's neurosis was caused by an injury sustained in the accident of March 26th, or if the evidence had shown such to be the case, then the award would have been proper. The plain language of our statute makes it imperative that the disease be the result of an injury.

''While the commission in its findings did not so state, the only conclusion to be drawn therefrom is that the commission believed respondent's neurosis was not induced by any personal injury he suffered but by a deep-set fear or apprehension of imaginary ailments that might follow as a result of his injury and the deplorable condition in which his family might be left. There was medical testimony to sustain such a conclusion. Whether this be a correct conclusion

or not, it is not necessary to determine. There being no finding that the respondent's neurosis was the result of an injury, he must necessarily fail, as our statute makes that indispensably necessary to entitle him to compensation for disease.''

We reaffirm the law as stated in the Pierce and Eads cases, *supra,* as being the law of Arizona. We think, however, that there is sufficient evidence in the present case from which the commission might have found, as it must have in order to make its award, that petitioner's neurosis was the result of the traumatic shock which he received, and was not due to ''a deep-set fear or apprehension of imaginary ailments that might follow as a result of his injury and the deplorable condition in which his family might be left.'' *Phelps Dodge Corp. v. Industrial Commission of Arizona and Eads, supra.*

Such being the case, the award is affirmed.

McALISTER and ROSS, JJ., concur.