219 P.2d 773

KOCH v. INDUSTRIAL COMMISSION OF ARIZONA et al.

No. 5248.

Supreme Court of Arizona.

June 12, 1950.

W. H. Chester, of Phoenix, attorney for petitioner.

Robert E. Yount, Phoenix, Attorney for respondent, The Industrial Commission of Arizona, H. S. McCluskey, and Donald J. Morgan, Phoenix, of counsel.

STANFORD, Justice.

On March 17, 1945, petitioner filed with The Industrial Commission of Arizona his claim for compensation for injuries received while employed by the Railway Express Agency at Phoenix, Arizona. Petitioner was working then as express handler. The injury was sustained on August 29, 1945, while freight was being passed to petitioner from a box car and petitioner stepped off the baggage truck falling on his left coccyx bone, and a trunk fell off striking him on the right leg.

Petitioner was released by a physician and returned to work on August 31, 1945. On March 17, 1947, petitioner filed with the Industrial Commission his petition and application for readjustment or reopening of claim in which petition he alleged:

"That I am requesting a final examination of my back inasmuch as I never had a final medical examination, and my back has continued to give me trouble at times, especially when doing physical labor. I am requesting that the same consulting board review this case when they examine me, as requested by Dr. Drane, relative to my foot injury of August 2, 1946."

On March 19, 1947, a medical board consisting of Drs. J. M. Greer, James A. Moore and J. E. Drane, examined the petitioner. In part that board stated:

"This man was seen in consultation with reference to two injuries, the first being an injury to the back sustained August 29, 1945.

Mr. Koch states that on that date he slipped and fell over backwards onto the concrete. The records indicate that he was discharged after a few treatments as cured on September 26, 1945. He states that he has continued to have some soreness in the back, particularly after hard, strenuous work. The second accident occurred August 2, 1946, on which date he states that a 450-pound weight struck him a glancing blow on top of his right foot. He states that the force of the blow was such that his heel burst the seams of his shoe in back. X-rays which were made failed to reveal any evidence of fracture or bone injury. * * *

"* * * The chest is of the emphysematous type. The breath sounds were distant and indistinct but no rales were heard. In this connection he states that he has had bronchial asthma for many years, * * *

"* * * While there are complaints referred to the back and much milder complaints to the right foot, there apparently is no working disability as Mr. Koch is continuing at his regular occupation."

Off and on examinations were had and on January 12, 1949, a board of medial examiners recommended that "Mr. Koch be referred for a thorough neurological examination and a period of observation which will probably not require any hospitalization and only a minimum of lost time from work."

Thereafter on February 4, 1949, Dr. John Green, after having made an examination of

Mr. Koch in his office, wrote a very thorough letter to the Industrial Commission and under "comments" stated: "It is my impression that there is no evidence of organic pathology, and that the patient is suffering from a very marked conversion hysteria."

Also a report dated February 22, 1949, from Dr. Otto L. Bendheim, who specialized in neurology and psychiatry, addressed to the Industrial Commission stated under the heading of "comments" that:

"The radiological findings of the spine are only of minor importance regarding the formation of his present complaints and symptoms. These symptoms are essentially those of a *conversion hysteria with anxiety reactions* and are attributable to:

"1.   His underlying personality make-up.

"2.   The accident in question."

Under date of March 1, 1949, Dr. James R. Moore, medical advisor for the Industrial Commission, wrote the claims department, in part, as follows:

"After a careful review of Dr. Bendheim's report of February 22, 1949, my impression is that this report indicates that the conversion hysteria has resulted partly from the underlying personality make up, but principally from a dissatisfaction with his job.

"In the absence of physical evidence of organic injury, to treat and compensate on the basis of a social and economic mal-adjustment is not, from the medical standpoint, warranted as an industrial responsibility. * * *"

"In justice to Mr. Koch, I believe that his case should be held open until after he obtains new employment, not for the purpose of continued treatment but for reexamination and reevaluation of his case after he has been at work for a period of sixty to ninety days."

Therefore, from the record of the case, the Industrial Commission, as the insurer of the Railway Express Agency, on March 4, 1949, made its findings and award in the case as follows:

"Accident benefits through March 1, 1949."

Thereafter on March 9, 1949, petitioner filed his application and petition for rehearing, and the same thereafter was denied.

The statement of the case as above related contains nearly all of the medical evidence. The fact that the injury was received is not disputed.

The issue in the case is, will conversion hysteria with anxiety reactions which are attributable to the applicant's underlying personality make-up and the accident in question, entitle him to further compensation under the workmen's compensation law, in the absence of any showing of disability for work or lessened earning capacity?

The first witness called by the petitioner was Dr. O. L. Bendheim, who, together

with Drs. Greer, Goodman and Green, was among the physicians who had been reporting on this case. Dr. Bendheim, in part, testified:

"Q. From that I would take it he did have some indication of injury to his lower back? A. I couldn't find any indication of that, no, sir. I found some tenderness and inhibition of motion but that by itself is not enough to make the diagnosis of trauma to those parts.

\*     \*     \*     \*     \*     \*

"Q. Would you say that reviewing the history of this particular case that they were probably caused by accident? A. I couldn't state that.

\*     \*     \*     \*     \*     \*

"Q. In your examination of Mr. Koch what was your particular purpose in your examination? A. The particular purpose of my examination was to find out if there was any neurological or psychiatric lesion or disability present.

"Q. What are your conclusions as to that? A. The conclusions that I read before, given in the comment that I just read.

"Q. That is that he has a conversion hysteria and anxiety reactions? A. That is correct.

"Q. Which have been aggravated by the accident in question? A. Yes, sir."

A case which resembles, but indeed is not like the case at bar, is Phelps Dodge Corporation v. Industrial Commission, 46 Ariz. 162, 49 P.2d 391, 393. This is a case where one Frank Eads while working for the Phelps Dodge Corporation was injured by accident arising out of and in the course of his employment. Eads was injured in one of petitioner's mines when a blast of a "missed hole" caused the shaft and drifts of the mine to be filled with smoke, sulphur gas and dust. The character of this case which, however, is not comparable to the instant case, but is near as there is among our cases, is that mental or physical suffering which does not lessen the employee's ability to work and earn wages is not compensable, the theory of the law being to compensate the employee during the term of disability only for his injuries. The court in that case said:

"\* \* \* There is no finding by the commission that respondent's neurotic condition is the result of any injury he suffered, the finding being that it was 'traceable in part to circumstances arising out of and immediately following his alleged injury.'

"In Pierce v. Phelps Dodge Corporation, 42 Ariz. 436, 26 P.2d 1017, we said: 'Our statute in section 1420, Rev.Code 1928, construes for certain purposes the phrase "personal injury by accident arising out of, and in the course of the employment," and it is specifically stated that it "does not include a disease unless resulting from the injury." It is obvious from this that when compensation is awarded in any manner for a disease there must have been (a) an unexpected event which was (b) the cause of

an injury to the person, (c) which injury must have produced or aggravated a disease.' We think this decision settles the matter against respondent.

"We are not questioning the correctness of respondent's legal proposition, but, on the contrary, think it states the law. The only difficulty in applying it here is that it does not fit the facts as found by the commission. If the commission had found that respondent's neurosis was caused by an injury sustained in the accident of March 26th, or if the evidence had shown such to be the case, then the award would have been proper. The plain language of our statute makes it imperative that the disease be the result of an injury.

"While the commission in its findings did not so state, the only conclusion to be drawn therefrom is that the commission believed respondent's neurosis was not induced by any personal injury he suffered but by a deep-set fear or apprehension of imaginary ailments that might follow as a result of his injury and the deplorable condition in which his family might be left. There was medical testimony to sustain such a conclusion. Whether this be a correct conclusion or not, it is not necessary to determine. There being no finding that the respondent's neurosis was the result of an injury, he must necessarily fail, as our statute makes that indispensably necessary to entitle him to compensation for disease."

Conversion hysteria with anxiety reactions attributable in part to the injury resulting in no disability for work and not adversely affecting earning capacity is not compensable under our law and this court is required to affirm the award.

Award affirmed.

LA PRADE, C. J., and UDALL, PHELPS and DE CONCINI, JJ., concur.