319 P.2d 129

George A. McALLISTER, Petitioner,

v.

The INDUSTRIAL COMMISSION OF ARIZONA, and John W. Tarpley (Tucson Iron Works), Respondents.

No. 6460.

Supreme Court of Arizona.

Dec. 17, 1957.

Jack T. Arnold, Tucson, and Lawrence Ollason, Tucson, of counsel, for petitioner.

James D. Lester, Tucson, for respondent Industrial Commission of Arizona.

John R. Franks, Donald J. Morgan and Robert K. Park, Phoenix, of counsel.

PHELPS, Justice.

George A. McAllister petitioned for and was granted a writ of certiorari to review the findings and award of the Industrial Commission denying him compensation. We must determine only one question—does reasonable evidence support the Commission's findings?

Petitioner McAllister sustained a compensable injury to his back as the result of an accident in June of 1954. An orthopedic surgeon operated on him for a herniated disc. During the operation the surgeon found no evidence of a herniated disc, but did remove a congenital anomaly of the fifth lamina which he believed to be the probable cause of the pain suffered by McAllister. On March 29, 1955 the Commission found McAllister's condition to be stationary and that he sustained a 15% general physical functional disability as a result of this accident.

On November 9, 1955 McAllister sustained a second compensable injury to his back as the result of an accident. Dr. Burleigh, an orthopedic surgeon, treated him for this injury. On the following December 17 an x-ray photograph was made of his back in the lumbar area which revealed according to the report of the radiologist, Dr. Keely, a defect involving

the pars interarticularis of L–5 on the left, some question of the integrity of the pars interarticularis of L–5 on the right, but no definite evidence of spondylolisthesis or slipping. This x-ray plus a two-year history of recurrent back pain and inability to work caused Dr. Burleigh to request permission to fuse the L–5 S–1 articulation. A month and a half later Drs. Beaton, a psychiatrist, Derickson, an orthopedist, and Burleigh examined McAllister in consultation. In their report they did not discuss the x-ray photograph or report, did not discuss the advisability or inadvisability of spinal fuson, but recommended flexion exercises, a lumbo-sacral support, and a myelogram if the flexion exercises aggravated the back. A myelogram was done and after viewing the results and a review of the old x-rays with a Dr. Wilson, Dr. Burleigh felt the patient had a recurrent herniated disc for which he recommended reexploration and removal of the disc and again a spinal fusion if the previously mentioned defect at L–5 were revealed to be quite unstable. In May of 1956 McAllister was examined by Dr. Cortner, another orthopedist, in consultation with Dr. Burleigh. They concluded that he did not have a herniated disc, but did not mention spinal fusion pro or con in their report. Their report reveals that they did not have before them the December 17 x-ray which showed the defect at L–5 for which Dr. Burleigh had recommended

spinal fusion and there is no indication in their report that the report of that x-ray was available for their joint consideration. A month later McAllister was examined by Dr. Neumann, a psychiatrist. He also concluded that he could find no evidence of a herniated disc and that he could not relate any disability to either of the accidents. His report also suggests that he saw only the myelogram and not the December 17 x-ray showing the defect at L–5. McAllister was next examined on July 2, 1956 by the Medical Advisory Board consisting of one neuro-psychiatrist, two orthopedic surgeons, one general practitioner, and two general surgeons. Their report summarized in chronological order *most of the reports and letters written by doctors concerned with the case from the first accident in June of 1954.* Although included among these summaries are the x-ray and myelogram reports prior to the second injury and also the first letter in which Dr. Burleigh discussed the December 17 x-ray showing the defect at L–5 for which he recommended spinal fusion, the *Medical Advisory Board report does not mention any of the x-ray or myelogram reports made since the second injury.* Its report merely states that the x-rays were reviewed and lacks any indication of which x-rays were reviewed, and most particularly fails to indicate that the Board saw the December 17 x-ray which reveals the defect for which spinal fusion was recommended.

After the summaries, a transcript of McAllister's testimony of his history and complaints, and a description of the Board's seemingly thorough physical and neuropsychiatric examination, the Medical Advisory Board report concludes:

"Comments: It is the opinion of the undersigned examiners that the patient's condition is now stationary and that no further treatments or examinations are indicated.

"There is nothing in today's examination to indicate any nerve root irritation such as would be occasioned by a protruded intervertebral disc nor do we feel a spinal fusion is indicated. There is nothing in today's examination to indicate the patient has more than the 15% general physical functional disability that was ascribed on March 29, 1955."

Before this report was filed with it the Commission made findings that McAllister's condition had become stationary and that he sustained a 15% general physical functional disability as the result of the second accident. McAllister petitioned for a rehearing. After the Medical Advisory Board report had been filed, the Commission corrected its previous findings by entering new findings to conform to the conclusion of that report. In its new findings the Commission changed the 15% to no permanent partial disability as a result of the injury from the second accident after quoting the conclusion to that effect in the Medical Advisory Board report.

McAllister again petitioned for rehearing. A rehearing was granted as a result of which Dr. Burleigh testified before a referee in Yuma, and Drs. Beaton and Cortner testified before a referee in Tucson. Dr. Burleigh reiterated his belief that spinal fusion should be performed because of what he diagnosed as an unstable back caused by the congenital defect at L–5 shown on the December 17 x-ray. He stated that he believes spinal fusion is indicated because of the continuing complaints of back pain even though the x-ray did not reveal definite evidence of spondylolisthesis or slipping of one vertebral body over another. One of his comments suggests that some of the x-ray films have disappeared. Dr. Beaton, because he is not a specialist in radiology or orthopedics, refused to comment on whether any significance was given by the Medical Advisory Board to statements from the December 17 x-ray report. He did state that the two orthopedic members of the Board reviewed the x-rays but he did not say whether the December 17 x-ray was among them. He stated that he concurred in the conclusion of the Medical Advisory Board, that neither neurologically nor psychologically would he have been inclined to recommend any surgery, but that he would not interpose a neurological

or psychiatric objection to surgery in the case. Dr. Cortner testified that he always wants to look at the x-ray itself rather than just a report before rendering any opinion. Nevertheless he was shown a copy of the December 17 x-ray *report* and was asked to explain the meaning of certain statements. In the course of his testimony he stated that most orthopedists do not think that the defect itself should cause any disability if there is no slipping, that there can be a great deal of disability though only a little slipping, that slipping can occur at any time but the defect must be on both the right and the left before slipping can occur. Dr. Cortner also stated that practically anybody who has undergone surgery for a suspected herniated disc can be said to have an unstable back which causes pain and that this could account for the pain of which McAllister complains.

At the rehearing McAllister introduced the testimony of two disinterested witnesses who were familiar with his attempts to work at two separate jobs since the second accident. Both testified that from their observations he was unable to perform the jobs effectively because of what he termed severe back pains. The testimony of McAllister and these two witnesses is to the effect that he made a sincere effort to seek and retain employment, but was unable to do so because of severe back pains. We find no evidence in the record which either counters or explains this testimony.

After the rehearing the Commission affirmed its previous findings and award whereupon McAllister petitioned this court for review by certiorari. He admits that this court is bound by the findings of the Commission if the medical evidence conflicts under Harmon v. Industrial Commission, 76 Ariz. 40, 258 P.2d 427. He asserts, however, that the record in this case does not disclose a conflict in the medical evidence because the opinion of the Medical Advisory Board does not constitute evidence unless it is supported by medical findings. Such was our holding in Tashner v. Industrial Commission, 62 Ariz. 333, 157 P. 2d 608.

Prior to the accidents McAllister was able to effectively perform manual labor which was the only work he has been trained to perform. Since the accidents the evidence indicates that he is totally incapable of performing the work which he has been able to obtain. Some explanation of this is necessary—either he is suffering from some physical disability, or he is suffering from some nervous disorder such as hysteria, or he is malingering. There is no medical evidence or medical opinion in the record that states that he is malingering. As to hysteria the record reveals that each time a psychiatrist has been called in consultation on the case, the report of

the examination, including that of the Medical Advisory Board, states that certain symptoms indicate hysteria. The Medical Advisory Board report states:

"Psychiatrically, a diagnosis of hysteria occurring in a man of somewhat passive and inadequate personality can be made."

If we were to assume that this constitutes a diagnosis of hysteria, no where in the record is there any suggestion that this does or does not underlie the complaints of back pain. Neither does the record show whether this hysteria was or was not caused or aggravated by the accident. As to physical disability presumably the Medical Advisory Board's conclusions that spinal fusion was not indicated; that McAllister's condition was stationary and no further treatments or examinations were necessary; and that he sustained no more than the 15% physical functional disability which was ascribed to the first accident were based upon an opinion that McAllister sustained no physical disability as a result of the second accident. The sort of physical disability complained of would seem to be one which could be diagnosed only by x-ray, and yet the Board presented its conclusions without giving any indication that it had seen the December 17 x-ray or report of it upon which Dr. Burleigh based his recommendation of spinal fusion. At the rehearing Dr. Cortner stated in effect that he wouldn't want to render any opinion diagnostically as far as McAllister was concerned without first reviewing the x-ray film himself. His testimony to the effect that slipping can occur at anytime and that there may be a great deal of disability with only a slight degree of slipping suggests that only a fairly recent x-ray can serve as a valid basis for an opinion as to physical disability in a case such as this. The suggestion that the Medical Advisory Board did not see the December 17 x-ray is strengthened by the fact that it was not available for Dr. Cortner's consultation with Dr. Burleigh in May of 1956 nor for Dr. Neumann's examination in June of that year and by Dr. Burleigh's statement at the rehearing to the effect that he was confused about the x-ray films that disappeared.

The situation in the Tashner case, supra [62 Ariz. 333, 157 P.2d 610], was strikingly similar to the situation in the case at bar. In that case as in this the petitioner sustained an injury to his back after which he was unable to effectively perform any manual labor which entailed the use of the back. In that case as in this the doctors who at various times after the injury examined the petitioner found symptoms which could be the cause of the condition; the Medical Advisory Board concluded that any disability which petitioner may have suffered as a result of his accident had terminated; and neither the Commission nor the Medical Advisory Board offered any reasonable explanation for the petitioner's continuing

inability to work. In that case this court said:

> "* * * The commission should, and must, give due weight and consideration to the opinion of the medical board, but it is not bound by its conclusions, particularly where the conclusions are wholly unsupported by the actual facts, or, as here, contrary to the medical history and findings. It is the medical findings rather than the conclusion which constitute evidence. Obviously, the conclusion or opinion which is counter to the actual facts or findings, and which on the face of the record is illogical and without support, cannot be treated as reasonable evidence."

We can conclude no more aptly than to sum up this case by the concluding statement in the Tashner case, supra:

> "* * * Here, stated in the simplest terms, we have a case where a man has been injured. His disablement continues. The medical experts cannot ascribe his disablement to disease or to any natural cause. They do not set out any medical history that would show or tend to show that his condition did not result from his injury. The medical history indicates that whatever disablement he has is a result of injury. It is the only cause existing."

We believe the same result must follow in this case as in that.

Petitioner asserts in his brief that all he seeks is "an examination with x-rays to determine the status of his back injury, or in the alternative, a re-evaluation of his physical disability." It is not even intimated that petitioner is malingering. There has been no positive diagnosis that he is suffering from hysteria, and certainly there is no evidence in the record that he has not, at all times since his injury, suffered pain in his lower back area.

Award set aside.

UDALL, C. J., and STRUCKMEYER and JOHNSON, JJ., concur.

WINDES, Justice (dissenting).

I cannot agree with the majority's disposition of this case. Needless to say the nature of petitioner's injuries are such that the extent thereof must be determined by expert medical evidence.

The petitioner sustained two accidents. The first occurred in June, 1954. In March, 1955, the doctors found his condition had become stationary with a 15 percent physical functional disability. In May, 1955, the commission made its so-called interim award to the effect that his condition was stationary and placed him on temporary partial disability pending deter-

mination of his earning capacity. Petitioner returned to work and on November 9, 1955, sustained a second unjury. Final processing of his first injury was suspended pending recovery from the second injury. The medical testimony and reports referred to in the majority opinion are the result of medical examinations to determine the effect of the second injury.

The medical advisory board consisting of six doctors after a thorough physical examination and as reflected in its report a consideration of various documents, reports and review of x-rays found that nothing indicated petitioner had more than the 15 percent physical functional disability that had been ascribed to the first injury and that his condition was stationary and no further treatments were indicated. This board also found no spinal fusion was indicated.

After the second accident there were x-rays on December 17, 1955. Dr. Burleigh testified he examined the report of Dr. Keely, the radiologist, and examined the x-rays and that he (Burleigh) wrote the commission relating what the x-rays revealed and requesting permission to perform a spinal fusion. The advisory board's report reflects that it had this letter before it for consideration. In referring to this letter the advisory board's report states:

"However, he continued to have back pain and therefore, on the 16th (sic) of December new x-rays were taken which showed a spondylolysis of L5 S1 articulation on the left. There were still no findings of herniated intervertebral disc but with a two-year history of recurrent back pain and inability to work steadily, he believed that the instability of the lumbosacral joint due to the spondylolysis was causing the pain and requested permission to fuse the L5 S1 articulation."

The majority seem to believe that because the board did not indicate a personal examination of the December 17th x-rays nor the radiologist's report thereof, its opinion is valueless as medical evidence. There is no dispute as to what the x-rays show and the board was given and had full knowledge of this showing for consideration in arriving at its opinion.

The effect of the court's ruling is that the board has given an opinion which is valueless as evidence because it is unsupported by medical facts. The report consists of 14 single-spaced pages substantially all of which relate to medical facts. The report reflects a thorough personal physical examination and a consideration of everything the many doctors had discovered since petitioner was first injured. Being in possession of these facts it is difficult for me to comprehend how their evidence is without value.