352 P.2d 359

George A. McALLISTER, Petitioner,

v.

INDUSTRIAL COMMISSION of Arizona and John W. Tarpley (Tucson Iron Works), Respondents.

No. 6792.

Supreme Court of Arizona.

May 18, 1960.

Rehearing Denied June 14, 1960.

Jack T. Arnold and Lawrence Ollason, Tucson, of counsel, for petitioner.

James D. Lester, John R. Franks, Donald J. Morgan, Frances M. Long and Edward E. Davis, Phoenix, of counsel, for respondent Industrial Commission.

BERNSTEIN, Justice.

Petitioner seeks in this certiorari proceeding to set aside an award of The Industrial Commission of Arizona (hereinafter called the "Commission") denying him permanent compensation for injuries sustained in an industrial accident which took place on November 9, 1955. A prior award of the Commission denying petitioner compensation for the same accident was set aside by this Court in McAllister v. Industrial Commission, 83 Ariz. 213, 319 P.2d 129, on the ground of insufficiency of evidence, essentially for the reason that the Medical

Advisory Board had failed to consider recent x-rays of petitioner before arriving at its finding that petitioner had suffered no physical disability as a result of the accident.

Following our decision petitioner was examined again by the Medical Advisory Board which affirmed its prior conclusion that petitioner's condition was stationary and that he had not sustained any disability over the 15% general physical functional disability awarded to him for a previous accident which occurred in June 1954. The Board also concluded that petitioner had a "definite and clearly diagnosable hysterical psychoneurosis and hypochondriacal reaction," which was not caused or aggravated by the accident.

The Commission held two further hearings. The record of the hearing held on February 21, 1958 shows that since June 1957 petitioner had been employed full time by Leo's Auto Supply as salesman and parts installer, earning an average of approximately $300 per month, and that petitioner had fully performed his duties, which involved, in part, strenuous physical effort applied in cramped or confined areas of movement. Petitioner himself testified that he had been able to perform his duties, but had suffered pain in doing so, and that his physical condition had become increasingly worse.

At a hearing on July 9, 1958, Dr. Lindsay E. Beaton, a member of the Medical

Advisory Board, was examined by the Commission and by petitioner's counsel. Dr. Beaton, a specialist in neurology and psychiatry, stated that he had performed the entire neuropsychiatric examination of petitioner and had prepared the conclusions on that subject on behalf of the Board. It was stipulated at the hearing that the neuropsychiatric examination made by Dr. Beaton, and his testimony, conclusions and recommendations given at the hearing, "speak for the entire Board."

Dr. Beaton testified that in his opinion petitioner is not a malingerer but suffers real pains which are the result of a psychoneurosis; that he has difficulty in sleeping, feels aching in his legs and back and feels tightening of his back muscles; that the pain is "not disabling" and "does not impair function," but it "bothers" and "impairs him" and does "interfere" with his "ability to earn a living * * *. to some extent"; that petitioner suffers from a "conversion hysteria" which reflects an unconscious effort on his part to preserve a psychological disability; that the 15% functional disability assigned to petitioner does not include the effects of his psychoneurotic symptoms; and that these symptoms will "probably slowly get better" and will "tend * * * to disappear" upon conclusion of the proceeding before the Commission.

Dr. Beaton stated that petitioner's psychoneurosis results from emotional causes within his personality and was not, and could not be, caused or aggravated, in a medical sense, by an outside trauma or accident; that he presumably would not have had his present symptoms but for the instant accident; that if petitioner "had not had a back injury, I doubt that his psychoneurotic symptoms would have lighted on his back"; and that there is a "connection" between the accident and the symptoms, with the accident as the "first step" and the psychoneurosis being the "final result." Dr. Beaton concluded that petitioner needs and should have "psychiatric treatment."

Thereafter the Commission entered its award denying compensation to petitioner, and found that petitioner sustained a 15% general physical functional disability as the result of the 1954 accident, for which he had been awarded permanent compensation; that he injured his back in the 1955 accident from which he has "completely recovered without residual disability"; that he "suffers from a hysterical psychoneurosis and hypochondriacal reaction, which accounts for a great majority of his symptoms, and which was neither caused nor aggravated by his accident of November 9, 1955, nor by the injuries resulting therefrom"; that he "is entitled to accident (medical) benefits and for compensation for total temporary disability from November 10, 1955 through July 8, 1956 in the sum of $1,500.89, all of which has been paid"; that petitioner's average monthly wage before the instant

accident was $272.80; and that petitioner "is physically and mentally able to perform the duties of his job with Leo's Auto Supply and therefore the applicant is not disabled for work by reason of his physical nor mental condition."

Petitioner has assigned three errors in this certiorari proceeding: first, that the finding of the Commission that petitioner suffered only a 15% loss of earning capacity is not supported by sufficient evidence; second, in the alternative, that petitioner should have been given further medical treatment for his injury; and third, that there was insufficient evidence to support the finding that petitioner's pre-injury wages were $272.80 per month.

Petitioner's third assignment of error is not supported by argument in his brief and will, accordingly, be deemed to have been abandoned. See e. g.: Brockmueller v. State, 86 Ariz. 82, 340 P.2d 992; Stallcup v. Coscarart, 79 Ariz. 42, 282 P.2d 791; Colboch v. Aviation Credit Corp., 64 Ariz. 88, 166 P.2d 584. Further, there is no evidence in the record herein to dispute the Commission's finding of pre-injury wages.

By his first assignment, petitioner disputes the purported finding of the Commission that he "suffered only a 15% loss of earning capacity * * *." The Commission found, however, that petitioner suffered a 15% general physical functional

*disability* as a result of a *prior accident,* and that the instant accident of November 1955 resulted in no residual disability. Having thus found no disability, the Commission did not determine petitioner's present earning capacity nor did it find whether he had suffered a loss of earning capacity as a result of the 1955 accident. We need not decide, however, whether the first assignment of error properly puts in issue the Commission's finding that petitioner suffered no permanent disability by virtue of the 1955 accident, as our decision on the second assignment of error is determinative of this appeal.

The second assignment raises the issue of petitioner's entitlement to further medical treatment for the injuries sustained as a result of the 1955 accident. With respect to the physical effects of these injuries, it is clear from the record that petitioner's condition is stationary and that he requires no further medical treatment therefor. Petitioner claims, however, that his psychoneurotic symptoms, which resulted from the accident and his physical injuries, do require treatment.

The Commission disallowed compensation and medical benefits for petitioner's psychoneurosis for the reason that this mental condition was not caused or aggravated by the 1955 accident or the resulting injuries. Such finding is based on the conclusion of Dr. Beaton and the Medical Advisory Board that there was no causation, in a

medical sense, between petitioner's condition and the accident and injuries sustained in November 1955.

The evidence and findings upon which such conclusion was based are not in conflict, and are substantially similar to the evidence presented in Murray v. Industrial Commission, 87 Ariz. 190, 349 P.2d 627. The Court's analysis of the evidence in that case is appropriate to the instant situation:

"(1) The accident and resulting injury played a role in setting up a sequence which produced the end result of mental disability. The accident was the first event in a long train of things that happened to the personality that ended up in the hysteria.

"(2) If the injury had not occurred, the neurotic manifestations would not be present. If the back injury had not taken place, this 'focus of the anxieties' would not have taken place.

"(3) There definitely is a connection between the back injury and hysteria. The illness 'takes its coloring' from the accident. Petitioner was a predisposed individual, reacting to the stimulus of this particular accident. This industrial accident was the occasion or environmental change in which the hysteria developed.

"(4) Petitioner was not afflicted with hysteria or psychiatric disability prior to this accident. There is no evidence that petitioner's neurosis was precipitated by any event in his life other than the accident.

"(5) The external stimulus of the accident and injury, acting upon the particular personality with which petitioner was endowed, is the event which started or set off the processes by which that personality developed the hysteria.

"To sum up, the injury resulting from this accident was the event which, in a natural and continuous sequence, unbroken by any efficient intervening cause, acting upon the particular personality configuration of this individual, produced the hysteria, and without which this particular hysteria would not have occurred. By definition, that is proximate cause. The injury need not be the sole cause of disability, if it is a producing cause." 349 P.2d at pages 632–633.

In the Murray case, as here, the doctors concluded that the admitted psychoneurotic symptoms were not caused by the accident or physical injuries. In rejecting the contention made by the Commission there, as here, that the medical conception of causation is conclusive for purposes of workmen's compensation, the Court stated:

"In the opinion of the doctors this injury did not 'cause' the hysteria from a medical point of view. However,

what constitutes proximate cause is a legal question primarily, dependent for its answer on the facts of the particular case. In the field of medicine, opinions of doctors qualified by training and experience as to causation are competent, and in many cases controlling and binding upon the trier of facts; however, when the medical facts on which such opinions are based are clearly shown, and the medical opinion as to causation conflicts with the inescapable legal conclusion, the former must give way to the latter. The difference in the medical and legal concept of cause results from the obvious differences in the basic problems and exigencies of the two professions in relation to causation. By reason of his training, the doctor is thinking in terms of a single, precise cause for a particular condition. The law, however, endeavors to reach an inference of reasonable medical certainty, from a given event or sequence of events, and recognizes more than one cause for a particular injurious result. In the law of torts, it is said that the tortfeasor is not entitled to a perfect specimen upon which to inflict injury. Likewise, in the field of Workmen's Compensation, the employer takes his employee as he is. *In legal contemplation, if an injury operating on an existing bodily condition or predisposition, produces a further injurious result, that result is caused by the injury."* (Emphasis added.) 349 P.2d at page 633.

The Commission claims, however, that petitioner's neurosis, even if caused by the accident, was not caused by the injuries suffered in that accident, and thus is not compensable. See Safeway Stores, Inc. v. Gilbert, 68 Ariz. 202, 203 P.2d 870; Smith v. Aluminum Company of America, 62 Ariz. 160, 155 P.2d 628; Phelps Dodge Corp. v. Industrial Commission, 46 Ariz. 162, 49 P.2d 391. We find this distinction wholly unwarranted by the record in this case. It is not supported by the report of the Medical Advisory Board or the testimony of Dr. Beaton. The conclusion of the doctors was that the psychoneurosis was caused by petitioner's fundamental personality structure rather than by the accident. No distinction was made between the accident and the injuries.

The comment of this Court in American Smelting & Refining Co. v. Industrial Commission, 59 Ariz. 87, 90, 123 P.2d 163, 164, is appropros, that

"in using the word 'accident' the physicians referred to the entire picture of the situation as it appeared on July 12th rather than to the technical accident alone, excluding the admitted traumatic injury resulting therefrom."

The following colloquy between petitioner's counsel and Dr. Beaton makes it clear

that no distinction was intended to be made between the accident and injury:

"Q. [Petitioner's counsel]: If it hadn't been for the *accident*, then this particular condition assumedly would not have manifested itself? A. [Dr. Beaton]: This particular condition assumedly would not have manifested itself. If he had not had a back *injury*, I doubt that his psychoneurotic symptoms would have lighted on his back.

"Q. But the symptoms are the direct result of the *injury* working on the man? A. Again, I don't like the word 'result' if it implies cause. Speaking as a physician, if you are speaking about the train of circumstances, certainly I go along with the statement that you asked me to make, that this was the first step in a train of events which has resulted in this man's having psychoneurotic back and leg pains at the present time." (Emphasis added.)

Here, the psychoneurotic symptoms were focused on petitioner's back, which was physically injured in the accident. These symptoms were thus connected, in a medical sense, or caused, in a legal sense, not by the accident alone, as distinguished from the physical injuries, but by the injuries which were themselves the result of the accident.

The same point was made in American Smelting & Refining Co. v. Industrial Commission, supra, where this Court held:

"that a nervous shock caused by an accident arising out of and in the due course of employment is a compensable 'injury' within the meaning of our statute. Since a shock is a compensable injury, and neurosis is a disease, a hysteria neurosis caused by shock is a 'disease * * * resulting from the injury.'" 59 Ariz. at page 92, 123 P.2d at page 165.

There, the Court stated that "petitioner's neurosis was the result of the traumatic shock which he received, and was not due to 'a deep-set fear or apprehension of imaginary ailments that might follow as a result of his injury and the deplorable condition in which his family might be left.'" 59 Ariz. at page 94, 123 P.2d at page 166.

The ruling in American Smelting & Refining Co. v. Industrial Commission, supra, was cited with approval in our recent decision in Murray v. Industrial Commission, supra.

We conclude that the record does not support the finding of the Commission that petitioner's acknowledged hysterical psychoneurosis and hypochondriacal reaction were not caused or aggravated by his accident or injuries.

The question remains, however, whether petitioner is entitled to medical treatment for his psychoneurotic condition. This question is, of course, different from the one posed in Cain v. Industrial Commission, 87 Ariz. 40, 347 P.2d 699. There we held that the Commission has no duty to provide expert medical testimony to prove that the employee is suffering from a neurosis. Here, the neurosis has been proved; medical aid is sought not to elicit testimony but to obtain treatment.

A.R.S. § 23–1021 provides that every employee covered by workmen's compensation who suffers injuries in an industrial accident shall receive "such medical, nurse and hospital services and medicines" as are provided by statute.

A.R.S. § 23–1081 provides:

"Every injured employee shall receive promptly medical, surgical and hospital or other treatment, nursing, medicine, surgical supplies, crutches and apparatus, including artificial members, reasonably required at the time of the injury, and during the period of temporary disability, as provided in § 23–1041. Such benefits shall be termed 'accident benefits'."

Such medical treatment and services are separate and independent from any monetary compensation to which an employee may be entitled. As stated in Lee Moor Contracting Co. v. Industrial Commission, 65 Ariz. 300, 302, 179 P.2d 786, 787:

"'Compensation' and 'accident benefits' are distinct elements of relief under our Workmen's Compensation Law."

Thus, although an employee is not entitled to *compensation* where a psychoneurosis, caused or aggravated by an industrial accident, does not disable him for work or adversely affect his earning capacity (see Koch v. Industrial Commission, 70 Ariz. 283, 219 P.2d 773), an employee is entitled to medical treatment even if he has not been disabled or has not suffered any loss of earning capacity. or, indeed, even if he has elected not to claim compensation under the Workmen's Compensation Law. See Engle v. Industrial Commission, 77 Ariz. 202, 269 P.2d 604; Pressley v. Industrial Commission, 73 Ariz. 22, 236 P.2d 1011; Paramount Pictures, Inc. v. Industrial Commission, 56 Ariz. 217, 106 P.2d 1024, modified on other grounds, 56 Ariz. 352, 106 P.2d 1024, 1027; Loman v. Industrial Commission, 54 Ariz. 413, 96 P.2d 405.

It is clear that "the period of temporary disability, as provided in § 23–1041" (A.R.S. § 23–1081, supra), which is not defined or referred to in A.R.S. § 23–1041, includes the period during which treatment is required, so long as the treatment is for an injury which resulted from an in-

dustrial accident. As stated in Lowman v. Industrial Commission, supra, 54 Ariz. at page 418, 96 P.2d at page 407:

"If she [petitioner] sustained an injury by accident arising out of and in the course of her employment as found by the commission, although not compensable because the injury caused no temporary or permanent disability, still she should have free medical attendance and medicine if such were necessary. One may receive an injury that in no way incapacitates his earning ability but does require medical attendance and cure."

In the instant case the Commission has found, and there is no dispute, that petitioner is suffering from a hysterical psychoneurosis and hypochondriacal reaction. According to Dr. Beaton, whose conclusions and recommendations "speak for the entire [Medical Advisory] Board," there is no conflict in the medical testimony that petitioner "needs treatment." Although questioning whether treatment would be successful, Dr. Beaton testified:

"He should have psychiatric treatment, psychotherapy. * * * Should have a trial on psychiatric treatment."

It is perfectly clear from the foregoing that the award of the Commission which denied petitioner further medical or psychiatric treatment is not supported by competent evidence.

The award is set aside.

STRUCKMEYER, C. J., and PHELPS, UDALL, and JOHNSON, JJ., concurring.