488 P.2d 675

Jose CASTELLANOS, Petitioner,

v.

The INDUSTRIAL COMMISSION of Arizona, Respondent,

Home Lumber and Supply Company, Respondent Employer,

State Compensation Fund, Respondent Carrier.

No. 1 CA–IC 404.

Court of Appeals of Arizona, Division 1, Department A.

Sept. 21, 1971.

Review Denied Dec. 21, 1971.

Nelson, Moran & Varga, by Garth Nelson, Yuma, for petitioner.

William C. Wahl, Jr., Chief Counsel, Phoenix, The Industrial Commission of Arizona, for respondent.

Robert K. Park, Chief Counsel, State Compensation Fund by Courtney L. Varner, Phoenix, for respondent carrier.

STEVENS, Presiding Judge.

This case is before the Court by writ of certiorari to test the lawfulness of an award and findings of The Industrial Commission of Arizona that the applicant had suffered no greater disability than that previously awarded to him.

The petitioner sustained an industrial injury on 19 March 1953. He was then a 29-year old laborer with a third-grade education, employed in Yuma in the yard of the respondent employer, Home Lumber and Supply Company. His regular duty at the time of his injury was grading, sorting and stacking lumber. While petitioner was in the process of cleaning up a place to start a new pile of lumber, an adjacent stack of lumber collapsed and fell on him, pinning him under it.

The principal injuries then reported as sustained by the petitioner were: fracture of the right hip; fracture of the right supraorbital area; partial avulsion of the nose; fracture of the maxilla; and loss of teeth.

After emergency treatment in Yuma, the petitioner was transferred to Phoenix. Orthopedic surgery was performed for open reduction of a fractured femur by application of a metal plate and screws. Petitioner was also treated for injuries to his face and teeth. The maxilla was re-fractured and a Steinman pin and Jelenko arch bars were inserted to treat the jaw fractures. Surgery was later performed on the nasal area to correct an obstruction of the airways. Dentists also extracted teeth and installed bridgework to replace the teeth lost or removed.

A consulting board thereafter found, in substance, that petitioner's condition was stationary, that he sustained a permanent partial disability of facial disfigurement and loss of teeth, and a 10% loss of function of the right leg. The board also observed that considering the loss of function of the leg together with the facial disfigurement "[t]he overall disability in terms of general physical functional disability is that of approximately a ten per cent general."

The Commission thereafter entered its findings and award providing total temporary disability from the date of the accident through 8 October 1953, and partial temporary disability through 11 October 1953. The facial injuries, and the permanent functional loss of use of the leg, were each found to be separate scheduled disabilities, with compensation allowed for an initial

period of four months at $141.63, then at $128.76 for an additional five months. There was no protest of this award and it became final.

On 18 September 1956, petitioner filed a petition for readjustment or reopening of the claim, alleging complete disability. Subsequent medical examination resulted in a report that no new or additional disability was found beyond that on petitioner's prior discharge in 1954, except possibly as to subjective complaints related to the metal bone plate. On 8 October 1956, the case was reopened to provide surgery for removal of the metal bone plate.

On 18 February 1957, an order was issued closing the case due to the petitioner's failure to submit himself for surgery.

The case then lay dormant for several years until petitioner filed a petition to readjust or reopen, alleging an injured spinal column, pelvic bone and painful jaws and gums. An examining physician, Dr. Greth, recommended the case be reopened for re-evaluation. Petitioner was examined, and the Commission entered an award denying the petition to reopen.

About a year later, petitioner filed another petition to reopen, claiming that a new and additional disability had resulted in a loss of earning capacity. The petition was supported by a report of examination by Dr. Cain, finding petitioner to be suffering from chronic fibro-myositis and arthritis secondary to the original injury. In December 1964, petitioner was seen in consultation by a board which included Dr. Johnson who had previously examined petitioner. In the opinion of the consultants, there was no evidence of new and additional disability attributable to the original injury; that the current complaints were on the basis of degenerative joint changes and that the petitioner should be able to perform his regular work as a laborer.

The Commission entered an award denying reopening of the claim. The award was timely protested and a petition for hearing filed, alleging that petitioner had a 10% general disability and a loss of earn-

ing capacity. At the hearing, petitioner's counsel raised the issue that, taking into consideration the two separate scheduled disabilities, to the face and to the right leg, the original award should have been for an unscheduled disability.

The referee's report following this hearing indicated that probably the original award should have been on an unscheduled basis, but concluded the award was *res judicata* since the original award was allowed to become final. The Commission issued another award affirming its previous award denying reopening.

Another year elapsed and the file now moved into the phase directly concerned in this proceeding. Another petition to reopen the case was filed by an attorney on behalf of the petitioner. This petition was summarily denied, and a petition for hearing timely followed. Another formal hearing was held in Yuma in December 1966.

At the hearing, the petitioner and two lay witnesses testified concerning his inability to work, and Dr. Bailey gave medical testimony concerning his treatment and examination of the petitioner. Following the hearing, as recommended by the referee, petitioner was examined by Dr. Lytton-Smith, an orthopedic surgeon. He was also scheduled to be seen by an orthodontist, but the orthodontist selected by the Commission refused to examine him. Dr. Lytton-Smith reported that he found changes in the petitioner's low back, that he found changes in the sacroiliac articulation, which in his opinion were probably attributable to the original injury. He recommended removal of the metal plate and screws in the leg, and gave as his opinion that the petitioner had new and additional disability over that previously awarded which he believed to be " * * * not more than a 15% general physical disability * * *."

The petitioner was later seen by a Yuma dentist, Dr. Thurmond, who recommended certain dental treatment, including replacement of the bridge which was necessitated by the accident. He stated in his report that it was not possible for him to deter-

mine whether the additional dental treatment was the result of the accident or not. There is no indication as to whether he received the medical report from the date of the accident or the Commission file for his review.

The Commission issued an award for new, additional or previously undiscovered disability on 15 May 1967.

Unfortunately for the petitioner, Dr. Lytton-Smith was on vacation, and was not available to begin treatment until after Labor Day of 1967. In his absence, the petitioner was sent to Dr. Haines for treatment. Instead of treating the petitioner, based upon the recommendations of Dr. Lytton-Smith, Dr. Haines submitted an examination report to the Commission in which he gave as his opinion the fact that the petitioner did not suffer a new or additional disability as the result of the accident. The Commission acted upon this report, and without convening a medical consultation board, without a further dental investigation, without a petition on the part of the respondent employer, or the petitioner, over the written objections of petitioner's attending physician Dr. Bailey, on 9 October 1967 issued an additional findings and award which found that his condition had again become stationary and that he was entitled to accident benefits through 5 September 1967, and had suffered no greater disability than that previously awarded to him. In view of the evidence before the Commission at that time, the Court is unable to understand the action of the Commission. But this was not the end.

The award was protested, and a petition for hearing was filed. The hearing was scheduled in Yuma almost a year later. The petitioner and Dr. Bailey testified concerning petitioner's inability to work since the last hearing. The testimony also disclosed that, in the intervening period, the petitioner had been committed to the State Hospital for treatment and observation. Dr. Bailey expressed the view that the petitioner's mental problems were causally re-

lated to the original injury. Counsel for the petitioner requested a continued hearing to a convenient future date in Phoenix, in order that he might subpoena appropriate doctors at the State Hospital, and examine State Hospital records with regard to the treatment of the petitioner, who had also been hospitalized there in 1956 and 1959.

A written report of Dr. Kivler, a psychiatrist who had examined and treated the petitioner in conjunction with the Arizona State Hospital, as an out-patient in Yuma, was submitted. The petitioner was granted a continued hearing; however, contrary to counsel's request the hearing was scheduled for Yuma on 31 October 1969, more than a year following the previous hearing.

By the time the Commission held the continued hearing, both psychiatrists who had examined the petitioner in Yuma had left the State of Arizona, each for a different state. Counsel for the petitioner had no alternative other than to offer in evidence records from a Social Security Commission hearing relative to the petitioner's mental problems. The records were objected to, and eventually the referee refused to admit them. Counsel for the petitioner renewed his plea for a continued hearing in Phoenix in order to put in evidence information available only at the Arizona State Mental Hospital. The referee refused to honor counsel's request, and issued a referee's report recommending that the award of no disability be affirmed with a 30-day clause. The Commission accepted the referee's recommendation, and the award complained of was issued.

Occasionally a case comes before the Court which causes us to wish that the Court possessed the power to reverse Industrial Commission cases with directions, a power we have in civil cases and this is such a case. This Court is empowered only to affirm or set aside the award of the Commission. A.R.S. § 23–951, subsec. D. We are in accord with Justice Alfred C. Lockwood in Ossic v. Verde Central Mines, 46 Ariz. 176, at page 184, 49 P.2d

396 (1935), wherein he sets forth at length the history and purpose of the Workmen's Compensation Act. As was pointed out by Justice Lockwood, and carried forward in a multitude of cases, the Workmen's Compensation Act should be liberally construed for the protection of those coming within its provisions. A.R.S. § 23–901 et seq., A.R.S. Constitution, Article 18, § 8; Parsons v. Industrial Commission, 98 Ariz. 74, 402 P.2d 20 (1965); Dunlap v. Industrial Commission, 90 Ariz. 3, 363 P.2d 600 (1961); Hannon v. Industrial Commission, 9 Ariz.App. 231, 451 P.2d 44 (1969).

■■ The petitioner raises the issue of whether the Commission, after an award for two scheduled disabilities had been made and then allowed to become final, upon a proper finding of new, additional or previously undiscovered disability may enter an award for an unscheduled disability. In our opinion the answer to this is yes. The Supreme Court said in International Metal Products Division v. Industrial Commission, 99 Ariz. 73, 406 P.2d 838 (1965):

"Except in claims for death benefits, the Commission can never ascertain whether an award is final. Most awards have an element of finality as to the granting or denying of the benefits sought by the application which precipitated said order; however, it retains jurisdiction of all compensation cases for the purpose of altering, amending or rescinding its findings and award at the instance of either employee, insurer or employer, (a) upon showing a change in physical condition of the employee subsequent to findings and award, arising out of the injury, * * *." 99 Ariz. at 78, 406 P.2d at 841.

We do not consider the propriety of the Commission's having evaluated the initial results of the accident as separate scheduled injuries. It is our opinion that when at a later date the separate scheduled injuries, operating together, create a new condition which renders the petitioner disabled for work, he is entitled to reopen his claim for new, additional or previously undiscovered disability for unscheduled disability. Mental conditions causally related to an accidental injury can be disabling and as such are compensable. Cammeron v. Industrial Commission, 98 Ariz. 366, 405 P.2d 802 (1965); McAllister v. Industrial Commission, 88 Ariz. 25, 352 P.2d 359 (1960); Baxter v. Industrial Commission, 6 Ariz. App. 156, 430 P.2d 735 (1967); International Metal Products v. Industrial Commission, 2 Ariz.App. 399, 409 P.2d 319 (1965).

■ The replacement of the wornout dental prosthesis should, in the opinion of the Court, be the responsibility of the Commission, either as a part of the reopening of the claim or under the provisions of A.R.S. § 23–1065, subsec. A, par. 2, the special fund.

■ It is the opinion of the Court that the Commission's denial of counsel's request for a continued hearing to be held in Phoenix, was arbitrary and capricious. It is often difficult for the attorneys in the State of Arizona who practice in cities where The Industrial Commission does not maintain an office to be fully abreast of the files and to represent their clients. The only State-operated mental facility is in Phoenix, and the records are accessible only by making a trip to Phoenix to examine them. Expert psychiatric medical witnesses are not always available in every city in the State. In the instant case, distance combined with what appears to us to be unconscionable time lags in setting hearings resulted in the petitioner being prejudiced in his efforts to sustain his burden of proof.

The award is set aside.

CASE and DONOFRIO, JJ., concur.