367 P.2d 526

J. Albert COCHRAN and Evelyn A. Cochran, Plaintiffs-Appellees,

v.

Andrew J. GORDON and Deweylee S. Gordon, Defendants-Appellants.

No. 6928.

Supreme Court of New Mexico.

Dec. 14, 1961.

Mayo T. Boucher, Belen, for appellants.

John E. Hall, Albuquerque, for appellees.

COMPTON, Chief Justice.

This is an action for the recovery of monies paid on a contract involving the purchase of certain real estate, for an accounting, and for the foreclosure of an equitable lien upon the premises. The controversy stems from a written contract between the parties, which reads:

"October 13, 1950

"We, Andrew J. Gordon and Deweylee S. Gordon, husband and wife, of our own free will, do hereby enter into an agreement with J. Albert Cochran and His Wife, Evelyn A. Cochran, for the sale of one-half (½) interest in the Amber Acres Ranch, located in Socorro County, New Mexico; and more specifically on M. R. G. C. D. Maps 138 and 139, and containing approximately 550 acres. It is further understood and agreed that said half interest includes all equipment on ranch, personal effects not included.

"It Is Understood and Agreed that all lands covered in this transaction are covered with quitclaim deeds, all of which have long passed the legal statute of limitations for redemption by prior owners. Action has been initiated and will be pursued to secure clear title and abstracts through legal channels to all lands involved. Costs involved in securing such additional title and abstracts will be borne on a

fifty-fifty basis. All taxes up to and including 1949 have been paid by parties of the first part—Gordons'.

"In return for the half interest ($\frac{1}{2}$), the parties of the second part—Cochrans', agree to pay parties of the first part the sum of Twenty-Two Thousand Five Hundred & No/100 Dollars ($22,-500.00), with Five Thousand & No/100 Dollars ($5,000.00) initial payment to be made this date. Balance of land payments will be made as mutually agreed, and at a rate of 3% interest on deferred payments. Interest to be paid annually.

"The parties of the first part further agree to reimburse parties of the second part all monies paid or invested as capital stock at a rate of 10%, within three (3) years, should they desire to withdraw from said partnership for any reason, at the end of the three-year period. In the event of withdrawal, this agreement will then become null and void.

"Both parties mutually agree to enter into this agreement with the sole thought of developing the lands into a paying farm-ranch enterprise, and any profits derived from this transaction shall be returned to capital investments, except as may be mutually agreed from time to time.

"s/ Andrew J. Gordon
    "Andrew J. Gordon
"s/ Deweylee S. Gordon
    "Deweylee S. Gordon"

Subsequently, on or about the 6th day of August, 1951, appellees notified the appellants in writing that they were withdrawing from the partnership agreement. The notice reads:

"Release of Agreement.

"To A. J. Gordon and whoever it might concern:

"As of this date, I withdraw from the partnership of your agreement with me made October 13, 1950, and release you and your wife from land sales of one-half interest in your land in Socorro Co., described in your sales agreement, as such agreement gave me the privilege of doing. So I claim no further interest in your lands named in that agreement.

"s/ Al Cochran
    "J. A. Cochran"

Appellants denied that they were indebted to appellees in any amount and, by counterclaim, sought damages in the amount of $30,000.00 due to appellees' abandonment of the contract. It developed after the proceedings were instituted that appellants had sold the premises to R. S. Miller and W. R. Watson under a purchase contract.

The ambiguity in the contract became immediately apparent to the trial court and by reason thereof resort was had to extrinsic evidence in arriving at the intention of the parties. The court made the following findings:

"1. That on October 13, 1950, defendants executed and delivered to plaintiffs a written agreement for the sale of an undivided one-half (½) interest in approximately 550 acres of land situate in Socorro County, New Mexico, and known as Amber Acres, together with a one-half (½) interest in all equipment on the ranch, a copy thereof is marked Exhibit A, attached to plaintiffs' complaint; that a more detailed description of said lands is shown in plaintiffs' Exhibit No. 22.

\*    \*    \*    \*    \*    \*

"3. That at the same time of making of the written agreement, plaintiffs and defendants entered into an oral agreement for the operation of the farm on said Amber Acres whereby the defendants were to reside on and manage and operate the said farm properties, and plaintiffs were to remain in Albuquerque and furnish operation money in an undetermined amount from time to time, and that the plaintiff, A. J. Cochran, would devote such time over the week-ends as he could to farming operations; that

neither partner would draw compensation as such until the farm was on a paying basis; that profits and losses in the farming operation would be shared on a 50-50 basis.

\*    \*    \*    \*    \*    \*

"5. That the written agreement is ambiguous, and extrinsic evidence is necessary to clarify and interpret it, and simultaneously with the making of said written agreement, there were certain oral agreements respecting some of the provisions thereof and which were a part of the agreement respecting the sale and purchase of the undivided one-half (½) interest in said real estate.

"6. That the said written agreement, respecting the sale and purchase of an interest in the Amber Acres property, is construed and interpreted by the Court, after resorting to extrinsic evidence and to the consideration of the oral agreements made simultaneously therewith, as follows:

"(a) The defendants were to sell and convey to the plaintiffs an undivided one-half (½) interest in the Amber Acres ranch property, together with a half interest in all equipment on the ranch, personal effects not included.

"(b) The costs involved in securing additional abstracts and clearing title

would be borne by the parties on a 50-50 basis.

"(c) The total price to be paid by plaintiffs for said undivided one-half (½) interest was the sum of $22,500.00, of which $5,000.00 was to be paid at the time of the making of said agreement, and the balance of $17,500.00 at such times and in such amounts as the parties would thereafter mutually agree, said balance to bear interest at 3% per annum until paid, interest payable annually.

"(d) The Cochrans had the right to withdraw from said purchase contract at any time within three (3) years from the date of making if they for any reason should become dissatisfied with the arrangement, and in the event of withdrawal the Gordons would repay Cochrans all monies which they had paid on said one-half (½) interest in the lands or which they had invested as capital stock, such as farming machinery and equipment, livestock, and capital improvements to or development of the land. The obligation on the part of the Gordons to repay said monies accrued at the end of the three-year period, that is to say, October 13, 1953, and the sums so advanced and to be repaid would bear interest at the rate of 10% per annum from date of payment until repaid.

"(e) Any profits arising from the farming operations would be invested in improvement of the land as capital.

"(f) The monies paid by the Cochrans were to be credited one-half (½) thereof to the payment of the one-half (½) interest in the lands, and one-half (½) to an 'operations account' to be used for the clearing, levelling, and development of the land, purchase of machinery, and for carrying on normal farm operations, and that the Gordons, to the extent of their ability, would contribute an equal amount to the so-called 'operations account.'

"7. Between October 13, 1950, and August 4, 1951, plaintiffs paid to defendants $12,001.34 to apply on the purchase of the one-half interest in said Amber Acres property.

\* \* \* \* \* \*

"14. That between August 4, 1951, and the filing of this suit there were numerous conferences between the plaintiffs and defendants, or some of them, and correspondence passed between them pertaining to the settlement and adjustment of their respective claims and obligations, and during such time various proposals were submitted by the defendants to the plaintiffs whereby their obligation to reimburse and repay to plaintiffs the monies advanced could be settled and

satisfied by means other than the payment of money, but that none of said proposals were accepted by the plaintiffs."

The court concluded that the notice of August 6, 1951, was a notice to rescind and did not constitute an abandonment of the contract, and that appellees were entitled to a refund of the purchase money previously invested by them in the partnership. Judgment was entered in favor of appellees for the amount claimed with interest at the rate of 10% per annum from date of entry of judgment and provided for a lien upon the unpaid balance then due the appellants under the contract. From this judgment, appellants bring the appeal for review of alleged errors.

■ Appellants challenge findings 6(d), 7, and 14 only, contending they are not supported by substantial evidence. Supporting their contention, they rely principally upon the evidence most favorable to them. This is not the test; upon appeal this court is committed to the rule that where there is a conflict in the evidence, the evidence, together with all reasonable inferences to be deduced therefrom, must be considered in a light most favorable to the successful party, disregarding all evidence to the contrary. New Mexico Bus Sales v. Michael, 68 N.M. 223, 360 P.2d 639; State ex rel State Highway Commission v. Tanny, 68 N.M. 117, 359 P.2d 350.

■ We agree with the trial court that the contract is ambiguous and that extrinsic evidence was required in construing and giving it effect. Clearly, it left unanswered the time of payment of unpaid balance; effect of withdrawal; when withdrawal could be made; when reimbursement was to be made, whether by a lump sum or over a period of years; the rate of interest; the meaning of the term "capital stock"; and whether the appellees were entitled to reimbursement for money paid on the purchase of the land as well as money invested as capital stock.

The Gordons testified that reimbursement was limited only to investment in capital stock, consisting of additional lands, to be purchased by the partnership, and that withdrawal could not be made within three years from the date of the contract. On the other hand, J. A. Cochran testified:

"Q. What were the instructions or the statement made by Mr. Gordon to you as to the treatment of this purchase money as a loan under certain conditions? A. I had a period of three years to withdraw from the contract. If, at any time within those three years, I withdrew, Mr. Gordon promised to repay me all the money that I had invested at the rate of 10% interest, but it was not due until the expiration of the three years from the original date when the contract was drawn.

"Q. And in what period of time could you withdraw? A. Within three years. If I stayed in over three years I could not withdraw from the contract.

"Q. But you had to withdraw before the expiration of three years? Within three years time? A. That's right.

"Q. And then, if you withdrew within that three-year period, when would this money become due to you? A. Three years after the date that I signed the contract originally; October the 13th, 1950.

\*     \*     \*     \*     \*     \*

"A. Mr. Gordon said, 'Inasmuch as you're getting 10% on the money that you're investing in Albuquerque in real estate loans, if you withdraw within three years, I will repay you at the rate of 10% interest—the same that you are getting on your money that you have invested in Albuquerque.'"

■ Aside from the testimony of the appellee Cochran, there is preponderating evidence that the Gordons recognized that they were indebted to the Cochrans for the amount awarded them by the court. The record discloses that subsequent to the notice of withdrawal, various propositions were made by the Gordons to induce the Cochrans to repurchase a portion of the land in settlement of the indebtedness. It was the province of the trial court to resolve the conflict. We deem the evidence substantial; consequently the findings are conclusive on appeal. Peugh v. Clegg, 68 N.M. 355, 362 P.2d 510; Hyde v. Anderson, 68 N.M. 50, 358 P.2d 619.

Under point 2, appellants argue that they were entitled to judgment as a matter of law, due to appellees' abandonment of the contract; that such abandonment worked a forfeiture of all amounts paid. In other words they contend that the contract became null and void due to Cochran's having withdrawn therefrom prior to the expiration of the three-year period. This point has no merit; what we have just said disposes of this argument.

Under point 3, it is argued that appellants are entitled to an offset in amount of $5,325.00, asserted to be one-half of the partnership debts owing at the time of Cochran's withdrawal. Appellants submitted a finding to this effect and its refusal is the basis for this point. This point is without merit. While it is true the court found that there were partnership losses existing when Cochran withdrew and that he was liable for one-half interest thereof, the court did not find that these losses amounted to $5,325.00. This can only be determined from an accounting.

■ Finally, it is asserted that the court erred in the granting of an equitable lien

upon the net proceeds from the sale of the property to Miller and Watson. We fail to see any error in the ruling of the court. Equity was sought and the granting of the lien was proper under the circumstances in order to afford full relief. At 92 C.J.S., Vendor & Purchaser, § 556, we find the following statement:

"It is a generally established rule, even in jurisdictions which deny or do not recognize vendor's liens, that, where a purchaser under a contract for the sale and purchase of real property has become entitled to the recovery of money paid by him under the contract or pursuant to its terms, he has a lien on the land constituting the subject matter of the contract for the amount which he has the right to recover, as security for the repayment thereof. This lien survives a rescission of the contract. The lien attaches when a payment on the purchase price is made, and remains whenever the right to recover the payment exists, whether the right exists by virtue of the express terms of the contract, or solely by reason of the vendor's default. * * *"

We now dispose of the question brought up under Rule 17(2), our Rules, whether the court committed error against the appellees. They contend that the court erred in refusing to make findings requested by them with respect to an accounting of the partnership affairs, and ask us to review

this alleged error. As we view the decision of the court, he did find appellees were entitled to an accounting and that none had been made, and concluded appellees should have one. This they should have had. Section 66–1–22, 1953 Comp. However, the requirement for an accounting was not carried into the judgment.

The cause will be remanded to the trial court to modify the decree to require an accounting. In all other respects the judgment is affrmed.

It is so ordered.

CHAVEZ, and MOISE, JJ., concur.

CARMODY and NOBLE, JJ., not participating.