Francis WRIGHT, Libelant, Appellant,

v.

MARYLAND BOAT LINE, INC., Claimant, Appellee.

Barry PORTNOY, etc., Libelant, Appellant,

v.

TOLCHESTER LINES, INC., Claimant, Appellee.

Nos. 6415, 6416.

United States Court of Appeals First Circuit.

Oct. 26, 1965.

W. Channing Beucler, Boston, Mass., with whom DiMento & Sullivan, Boston, Mass., was on brief for appellant in No. 6415.

George Broomfield, Boston, Mass., for appellant in No. 6416.

Joseph F. Dolan, Boston, Mass., for appellees.

Before ALDRICH, Chief Judge, WATERMAN, Circuit Judge,* and GIGNOUX, District Judge.

WATERMAN, Circuit Judge.

This is a consolidated appeal from two proceedings, tried to the court below sitting in admiralty. The claims of both appellants-libelants arise out of injuries they sustained while employed as seamen on the SS Provincetown. Each appellant-libelant urges that the lower court's award of damages to him was in several respects inadequate and must be reversed.

On July 6, 1962, libelants Wright and Portnoy were employed as seamen on the SS Provincetown, a passenger vessel that plied Massachusetts Bay between Boston and Provincetown. When the vessel was about four miles from Minot's Light one member of the crew fell overboard and the ship's officers ordered the number four lifeboat launched in order to attempt a rescue. While the lifeboat was suspended from the davits at approximately deck level some thirty feet above

* Sitting by designation.

the water libelant Portnoy was directed to enter the boat and tighten the seacock. This operation placed Portnoy in the stern of the boat. At the same time libelant Wright entered the bow of the lifeboat. A third member of the crew, one White, a messman, then entered it amidships, whereupon the lifeboat suddenly dropped to the ocean and the libelants received the injuries for which they seek damages. It appears that when White entered the lifeboat he was quite close to the mechanism that released it from the hooks at the ends of lines by which the lifeboat would have normally been lowered slowly into the ocean. The district court found that White had negligently activated this mechanism when he entered the boat and that his negligence was a proximate cause of the lifeboat's fall into the water. On appeal, none of the interested parties quarrel with the district court's finding on the issue of proximate causation. The libelants do separately contend that the district court minimized the extent and gravity of their injuries, that consequently the damage award each received was inadequate, and that reversals are required. We take up the claim of each libelant separately.

### I. Libelant Wright's Claim.

At trial Wright introduced evidence establishing that on August 2, 1962 a competent doctor, a Doctor Tompkins, examined him and concluded on the basis of special sternum X-Rays that Wright's manubrium was fractured; that, following this discovery, Wright had received treatment for this injury from August 2, 1962 until May 28, 1963; that he still experienced pain in his upper chest when he lifted heavy objects or coughed deeply; and that even though the fracture had healed it would permanently prevent Wright from doing any type of heavy labor. The district court believed this evidence but concluded that Wright had not proved that the injury to the manubrium was caused by the accident of July 6, 1962. Therefore, all claims for damages based upon the injury to the manubrium were disallowed below. The libelant contends that this ruling is erroneous.

Plainly, libelant's contention relates to the issue of cause-in-fact. No one doubts that the defendant would be liable for the injured manubrium and would have to respond in damages if it were established that Wright suffered this injury in the lifeboat accident of July 6, 1962. It is equally plain that the libelant had the burden of persuasion on this issue. See McCormick, Evidence § 307 (1954). In an attempt to carry this burden the libelant introduced evidence that tended to prove the injury to his manubrium was so caused. He established that doctors at both the South Shore Hospital in Weymouth, where he was taken immediately after the accident, and at the United States Public Health Service in Brighton, where he recuperated for several days, discovered pain in his chest which might have been caused by a fractured manubrium. But both hospitals X-Rayed their patient and neither set of X-Rays indicated any injuries to the chest wall other than several broken ribs. In the court below Dr. Tompkins testified, however, that a fractured manubrium could not be detected by ordinary X-Rays of the type taken at both the Weymouth and Brighton hospitals, and that special sternum X-Rays were required. The first set of sternum X-Rays was taken on August 2, 1962, by Doctor Tompkins; and these X-Rays established that the manubrium was fractured. Doctor Tompkins also testified that the X-Rays of the manubrium taken on August 2, 1962 indicated that a certain amount of callus had begun to form around this fracture which tended to prove that the fracture had achieved a certain age. Libelant also introduced evidence tending to prove that he had no marks on his body when he was last examined at the Brighton Hospital on July 25, 1962 and that he had no marks on his body when he first visited Dr. Tompkins on August 2, 1962. Dr. Tompkins testified that it was highly improbable that the libelant could have fractured his manubrium between July

25 and August 2 without leaving marks on his body; and he also testified that he did not believe libelant would have lived had he first fractured his ribs in the fall in the lifeboat on July 6, 1962 and at some later time between then and August 2, 1962 had received a blow severe enough to fracture his manubrium. In short, it was Dr. Tompkins's opinion that the fracture of the manubrium probably was caused by the libelant's fall in the lifeboat. At the conclusion of Dr. Tompkins's testimony libelant rested his case.

The district court's conclusion that the libelant had not carried the burden of proving the fractured manubrium was caused by the lifeboat accident was based on evidence that the X-Rays taken at the Weymouth and Brighton hospitals did not disclose a fracture of the manubrium, the conclusion of the Brighton Hospital staff on July 25, 1962, the date of Wright's last visit there, that he was experiencing only minor pain and would be fit for duty in one week, and the lapse of twenty-seven days between the lifeboat accident and the discovery of the fractured manubrium. Apparently the district court believed that these circumstances cast sufficient doubt on the issue of cause-in-fact to require a finding adverse to the petitioner on this issue.

On this record, however, it was sheer speculation for the trial court to find otherwise than that the fracture of the manubrium was caused by the lifeboat accident. See Yip Mie Jork v. Dulles, 237 F.2d 383, 385 (9 Cir. 1956).

As the opinion below indicates, the testimony of the expert, Dr. Tompkins, tending to prove the lifeboat accident probably caused the fracture of the manubrium, was uncontradicted. Furthermore, if one accepts Dr. Tompkins's uncontradicted explanation of the circumstances which the lower court relied upon in denying libelant's claim, one sees that these circumstances in no way tend to disprove a causal link between the lifeboat accident and the fractured manubrium. For example, appellee makes much of the fact that the Brighton Hospital staff noted that appellant complained of little, if any, pain when one would expect the appellant to have been suffering considerable pain if his manubrium had been broken. The experiencing of pain, however, is a highly subjective matter, and we are reluctant to say that a failure to complain of serious pain provides a sufficient basis upon which to reject the testimony of a competent medical witness who concluded that a failure so to complain should be discounted. Appellee also dwells upon libelant's failure to consult a physician until August 2. Dr. Tompkins testified, however, that this is fairly common behavior in cases of serious injury. And there are two answers to the negative X-rays taken at the Brighton Hospital. First, there is the testimony of Dr. Tompkins that ordinary X-rays would not show the damage and that special ones were required. This important medical testimony was not even subjected to cross-examination, let alone contradicted. Second, the completeness of the Brighton X-rays is even more demonstrably suspect. These X-rays disclosed two broken ribs. Dr. Tompkins found seven broken ribs, the second, third, fourth and seventh on the left side, and the second, third, and fifth on the right. The discrepancy is in Dr. Tompkins's favor for the records of the South Shore Hospital, where Wright was briefly hospitalized prior to his removal to Brighton note a fracture of one right rib, and fractures of the second, third, and fourth ribs on the left side. In this total situation the negative findings of the Brighton X-rays obviously have no significant probative effect.

■■ We recognize, of course, that a trial court has broad power to rely on the credibility assessments it makes when it determines disputed questions of fact. And we do not say that uncontradicted medical testimony must always be accepted. See 7 Wigmore, Evidence § 2034 (3d ed. 1940). We do hold, however, that when medical testimony, capable of being contradicted, is not only uncontradicted, but is also entirely plausible, and is consistent with facts otherwise established,

the burden of going forward is placed upon the other party. Compare Quock Ting v. United States, 140 U.S. 417, 11 S.Ct. 733, 851, 35 L.Ed. 501 (1891), with Chesapeake & O. R. R. Co. v. Martin, 283 U.S. 209, 51 S.Ct. 453, 75 L.Ed. 983 (1931). Appellee failed to carry this burden in the present case and consequently we hold it was error to find in its favor on the issue of cause-in-fact.

Predicated upon our holding that appellee caused and is responsible for the fracture of appellant's manubrium, we remand the case on this issue to the district court for a new assessment of damages.

As a seaman's claim for maintenance and cure is a claim that courts have always been vigilant to entertain, and the totality of libelant's damages will be considered upon this remand, the district court may well wish to reconsider its ruling foreclosing libelant from any allowance therefor.

■ Short shrift can be given to libelant Wright's other contentions. His claim for the medical expenses incident to the fractured manubrium will be determined on remand. We hold that the district court's award of $2500 for libelant's pain and suffering due to the injuries other than the fractured manubrium is well within the realm of fairness and we do not disturb it on appeal.

### II. Libelant Portnoy's Claim.

■ The district court found that in the lifeboat accident on July 6, 1962, libelant Portnoy suffered a broken finger, a laceration of the scalp, and injuries to his mouth, teeth and gums. The court concluded that, as a result, Portnoy was totally disabled for a period of ten days and partially disabled for three weeks. He was found entitled to $857.00 to compensate him for medical and hospital bills, $500.00 for reasonably foreseeable dental treatment, $700.00 for the diminution of his earning capacity during the period of his disability, and $1,000 to compensate him for pain and suffering. It is the libelant's contention that, as the evidence established that he had incurred

a subdural hematoma, a swelling of the brain producing pressure and resulting in headaches, this award, which totaled $3,057, was inadequate. We cannot agree. The only basis for this contention found in the record is the testimony of libelant's witness, Doctor Alexander, that certain of libelant's symptoms "possibly" were due to a subdural hematoma, but as his practice did not qualify him to make a final diagnosis he had for this reason recommended "further study and evaluation" by a neurosurgeon. On this evidence we think it clear that libelant Portnoy failed to sustain the burden of proving that he in fact suffered from a subdural hematoma. The issue of cause-in-fact need not even be reached. The decree of the lower court as to libelant Portnoy is in all respects affirmed.

Judgments in accordance with this opinion.