414 P.2d 679

Sidney C. ROSS, Plaintiff-Appellant,

v.

SAYERS WELL SERVICING COMPANY, INC., Employer, and Pacific Employers Insurance Company, Insurer, Defendants-Appellees.

No. 7697.

Supreme Court of New Mexico.

May 23, 1966.

Williams, Johnson & Houston, Hobbs, for appellant.

L. George Schubert, Hobbs, for appellees.

COMPTON, Justice.

Claiming total disability by reason of an accidental injury arising out of and in the course of his employment, the plaintiff has appealed from a judgment dismissing his claim for workmen's compensation.

The court found:

"2. That the plaintiff during the course of his employment, while employed by defendant Sayers Well Servicing Company, Inc., sustained an accidental injury on July 4, 1963, from which he was completely recovered on July 8, 1963, and

thereafter was not disabled to any extent."

Appellant relies for a reversal upon the ground that he now suffers from traumatic neurosis and compensation neurosis resulting from the accidental injury. He argues from this that the court's finding, though well supported as to his physical recovery, lacks support in the evidence as to a psychological condition resulting in his present disability.

The facts are not in dispute and we quote from appellant's statement of facts:

## "STATEMENT OF THE FACTS

"Plaintiff suffered an accidental injury while in the employment of defendants on July 4, 1963, when slack was permitted to come into a wire line or cable, and it hit plaintiff in the side of the head, catapulting him 12 feet in the air in a complete flip. He was struck in the jaw and behind the ear. After being helped up and placed on the back end of a pickup truck, he was dizzy, couldn't see, and was 'shaking like a dog.' His fellow employees took him to Dr. Lowery for treatment on July 4, 1963. He was permitted to return to work on July 8, 1963. Plaintiff continued to have dizzy spells and blackouts both off the job and on the job, until defendants' physician, Dr. Lowery, referred plaintiff to Dr. Jack Dunn in Lubbock on July 22, 1964. There, he was given a series of tests and examined by Dr. Dunn, a neurosurgeon, Dr. Smith, a psychiatrist, and Dr. Sheffield, an internist. Plaintiff has continued to have dizzy and blackout spells and has been unable to work since July 22, 1963.

"Plaintiff is 36 years old, has a ninth-grade education and has been working in the oilfields, for approximately 20 years. Plaintiff's mother testified that of her five children, he was the healthiest. He always enjoyed perfect health, and has been a hard worker all of his life since he began working in the fields when nine years old. Prior to this accident, plaintiff has sustained numerous injuries while working for various employers. Plaintiff had lost no time from work because of illness for some ten years prior to this injury. He has never had any prior injury to his head, nor dizzy spells, nor blackout spells until this accident on July 4, 1963. Since this injury, plaintiff's mother has observed his having the blackout spells, and she testified that she could not 'commence to count' the number of spells he has had, and that at some times, he has had as many as two spells in one day.

"Plaintiff's former employer's tool pusher, when asked what kind of a worker plaintiff was, testified: 'He was real good, dependable.' Shortly prior to this injury, plaintiff had completed a two-year contract working for a drilling company

overseas. Prior to going overseas, he and his wife were divorced, and his wife was awarded custody of their four children. While overseas, plaintiff was informed that his former wife's husband had molested his two daughters, aged 13 and 14, and he returned to the United States, and the Oklahoma Court awarded custody of all four children to plaintiff. The Court costs, attorney's fees, and transportation expenses in securing custody of his four children amounted to $4,000.00 Upon his return to the United States, plaintiff moved his children from Duncan, Oklahoma, to Hobbs, New Mexico, to secure employment and to get away from his former wife and her husband. Plaintiff worked in Hobbs until his injury. Plaintiff testified that he has a great concern for the welfare of his children since he is unemployed and unable to support them and expresses fear that if his former wife learns of his disability that she and her husband will take the children away from him."

The appeal turns on the testimony of medical experts. Dr. Jerome H. Smith, called by the claimant, testified that the claimant's disability was a combination of traumatic neurosis and a compensation neurosis resulting from the injury. We quote the pertinent part of his testimony:

"Q Doctor, in you[r] opinion, is the traumatic and compensation neurosis like you found Mr. Ross to have. The result the injury described to a medical probability?

A Yes sir.

* * * * * *

Q The injury that he sustained, I suppose that is synonymous with the word trauma, if I am not, then correct me on it—he got hit on the head. Can you state that that injury or that trauma causes his disability that he may have had when you examined him as a reasonable medical certainty, Doctor, or as a medical possibility, as a psychiatric possibility?

A I think it would be the reasonable medical certainty. In other words, you can't have a traumatic neurosis or compensation neurosis without having something to develop and precipitate the traumatic neurosis or precipitate something to develop or give someone motivation compensation.

* * * * * *

Q And you say it is a combination of compensation neurosis and traumatic neurosis?

A Yes sir.

Q Now would you explain what you mean by traumatic neurosis, in a layman's language?

A   Well, one who is subjected to repeated injury on the job as they get older they're naturally going to get more fearful of being hurt and everytime they are hurt they are more reluctant to go back into the job.

Q   Then actually just a minor injury of no physical impairment to his body as far as doing work and everything is concerned can trigger this off and the two combined can cause him to have blackouts that he has testified he has?

A   Yes, it certainly can.

Q   Just a small injury?

A   It can be a small injury or it can be a large—"

Dr. Smith was unable to fix any definite time it would require the claimant to recover from his present disability.

Dr. Donald M. Lowery, called by the employer, testified as follows:

"Q   Do you have an opinion, Doctor, whether or not he is now physically able to obtain employment and retain it?

A   If Mr. Ross is still having blackout spells from this standpoint, I doubt that he would be employable from a physical standpoint as far as his ability to work, there is no reason which would prevent him from doing it. There is no heart trouble, no lung trouble or difficulties with arms or legs. Physically he seems in good health; emotionally and and mentally is something else.

Q   That would include also, would it not, Doctor no organic neurological injury?

A   No neurological organic injury, by that we mean hemorrhage.

Q   Then outside of the psychiatric field it is your opinion he is completely recovered from concussion?

A   As far as the organic is concerned, yes.

Q   And able to work as good as he was before the accident; that would be a necessary conclusion?

A   Yes.

Q   Would you say that in your opinion that there is a medical probability that his injury relates to the blackouts spells, Doctor?

A   There is a possibility and let me elaborate. If you take four or five individuals and put them under similar circumstances then all four or five of the individuals may react the same or they may react differently. As a rule the individuals who are well adjusted will be able to tolerate the trauma better than an individual who is already having difficulty as

far as his adaption to society is concerned [;] an individual who is tense, who is anxious, who is already under considerable emotional strain would apt to develop psychiac [sic] difficulties more easily than someone who is well adjusted. Here again as an example during the war, individuals who developed shell shock quite often were those individuals who were already having difficulty with maladjustment; not always but usually and in this instance I say it is a possibility because I don't know what Mr. Ross' psychiac [sic] status was prior to the injury, if he was a well adjusted individual with no compensation, then an injury such as this nature would leave a question in my mind as to whether or not the injury of this extent could have precipitated such an episode. If he was already having considerable difficulty emotionally, then possibly it could have precipitated the difficulty that he is having now.

Q You use the word possible, but is it a reasonable medical probability from your training and experience that he is now disabled from the trauma or the injury?

A I can't say that it is a probability because I don't know what Mr. Ross was like before.

Q You can't say then that it is a reasonable medical probability that he is disabled then?

A No. If the man has lost an arm or a leg, if he has seen something real terrifying happen to him, then the possibility of him developing a traumatic neurosis would be increased. The amount of pressure it takes for an individual to develop psychiac [sic] difficulty varies with the individual adjustment. He is, as I mentioned before, if he is well adjusted individual, then it takes more psychiac [sic] trauma."

Obviously, the trial court in making finding No. 2 was of the opinion that there was a conflict in the testimony of the medical experts. We fail to see any conflict in their testimony. Dr. Lowery stated clearly that he was unable to express an opinion as to whether the claimant's disability was due to psychiatric problems arising from his injury because he did not know the claimant's background. This left Dr. Smith's testimony uncontroverted. It is conclusively established that disability resulting from traumatic neurosis is compensable. Gonzales v. Gackle Drilling Company, 70 N.M. 131, 371 P.2d 605. That the disability results from what the doctor chose to describe as "compensation neurosis" or "traumatic neurosis" does not suggest any basic difference between them or in the treatment to be accord-

ed. The fact remains that if a neurosis of the type described by Dr. Smith is present as a result of a work-connected injury, and claimant's earning powers are thereby adversely affected, we perceive of no reason why the same is not compensable under our act. See Larson, Workmen's Compensation, § 42.24; Lawyers' Medical Cyclopedia, pp. 366.7 to 372; 11 Defense L.J. 189; Hood v. Texas Indemnity Ins. Co., 146 Tex. 522, 209 S.W.2d 345.

■ Although there is a statement in Montano v. Saavedra, 70 N.M. 332, 373 P.2d 824, as well as in Renfro v. San Juan Hospital, Inc., 75 N.M. 235, 403 P.2d 681, generally to the effect that expert opinion evidence is not conclusive on the trier of the fact and may be disregarded even though uncontradicted, the statement in both of those cases was purely dicta, and not applicable under the facts there present. A rule concerning expert testimony generally as stated by us has been recognized in this court ever since Jamison v. Shelton, 35 N.M. 34, 289 P. 593, where, in connection with opinion testimony of an attorney as to the reasonable value of legal services, this court said, "*Such* expert testimony on the part of plaintiff is purely opinion evidence and not testimony as to facts and is not conclusive, even when uncontradicted." (Emphasis added.) This conforms to the general rule on this type of proof. See 32 C.J.S. Evidence § 569(10), p. 643. Neither do we think the use of similar language in State v.

Moore, 42 N.M. 135, 160, 76 P.2d 19, where insanity so as to excuse a homicide was the issue, nor in Elsea v. Broome Furniture Co., 47 N.M. 356, 143 P.2d 572, or in Teal v. Potash Company of America, 60 N.M. 409, 413, 292 P.2d 99, both being workmen's compensation actions antedating 1959, when § 59–10–13.3(B), N.M.S.A.1953, was adopted, is controlling here.

Section 59–10–13.3(B), supra, applicable here, requires that where causal connection between accident and disability is an issue, "the workman must establish that causal connection as a medical probability by expert medical testimony." By this language, the legislature has directed that medical evidence be presented to establish causal connection when that is an issue, thereby effectively overruling Teal v. Potash Company of America, supra, insofar as it held otherwise. This was recognized in Yates v. Matthews, 71 N.M. 451, 379 P.2d 441, where there was a conflict between the opinion expressed by the experts. In the instant case, where causal connection has been denied and must be established by medical testimony as a medical probability, and where medical opinion based on the facts has been expressed and is uncontradicted, the evidence is conclusive upon the court as trier of the facts.

Numerous cases from many jurisdictions so hold, even without a statute such as ours requiring medical testimony. For a few of these see: Wright v. Maryland Boat Line,

Inc., (C.A. 1, 1965) 351 F.2d 922, 925; Thompson v. Railway Express Agency (St. Louis, C.A.Mo., 1951) 236 S.W.2d 36; Jones v. Industrial Commission, 81 Ariz. 352, 306 P.2d 277; William Simpson Const. Co. v. Industrial Acc. Comm., 74 Cal.App. 239, 240 P. 58; Prendergast v. Retirement Board, etc., 325 Ill.App. 638, 60 N.E.2d 768; Medical Serv. of District of Columbia v. Llewellyn (D.C.App., 1965) 208 A.2d 734; In re Casey's Case (1965) 348 Mass. 572, 204 N.E. 2d 710; Travelers Ins. Co. v. Blazier (Tex. Civ.App., 1950) 228 S.W.2d 217; Williams v. Bituminous Casualty Corporation (La. App., 1961) 131 So.2d 844; Hebert v. Your Food Processing and Warehouse Co. (La. App., 1965) 170 So.2d 765; Hill v. Culligan Soft Water Service Company (Okl., 1963) 386 P.2d 1018.

■ We are forced to the conclusion that finding No. 2 has no support in the evidence and must be set aside. We note, however, that the appellant tendered a finding that the traumatic neurosis and compensation neurosis had rendered him totally disabled and prevented his performing any work and that he required further medical and psychiatric treatment, which tender was refused.

It follows the judgment must be set aside. The cause is remanded to the lower court with directions to enter judgment for claimant, including an award to claimant of reasonable attorney fees for the services of his attorneys in the district court, and in this court on appeal.

It is so ordered.

CARMODY, C. J., and CHAVEZ and MOISE, JJ., concur.

NOBLE, J., dissents.

NOBLE, Justice (dissenting).

I am unable to agree with the majority and, therefore, must dissent. In my view, the majority opinion is erroneous in two important respects that are controlling: first, in holding that compensation neurosis is compensable, and secondly, in the conclusion that the evidence of a causal connection between the claimed present disability and the accident has been established as a medical probability by the undisputed evidence, or that such evidence was binding on the trial court.

The premise upon which the majority hold that compensation neurosis is compensable is that there is neither a basic difference between it and "traumatic neurosis," nor in the treatment to be accorded to them. If that premise is erroneous then the result reached by the majority is erroneous. In my view, the majority premise is neither borne out by the weight of the decided cases, the medical texts, nor by the testimony of the medical experts in this case.

We are concerned in this case with "compensation neurosis" or "anxiety neurosis"

or "desire neurosis" as it is frequently called, as distinguished from "traumatic neurosis or "traumatic hysteria." Professor Larson, in 1 Workmen's Compensation Law, § 42.24, characterizes "compensation neurosis" by saying that: "The most controversial mental-injury question is that of the compensability of 'compensation neurosis.' " Since the majority hold that compensation neurosis is compensable because they perceive no basic difference between it and traumatic neurosis which we have held to be compensable, we must examine the two types of neurasthenia and their differences both in origin and in treatment.

"Traumatic neurosis" or "traumatic hysteria," as distinguished from "anxiety neurosis" arises from or is caused by a mental shock resulting from accident. Maloy, Nervous and Mental Diseases, p. 307; American Smelting & R. Co. v. Industrial Comm., 59 Ariz. 87, 123 P.2d 163. The traumatic hysteria is perhaps the most common of the "functional" nervous diseases met with after injury. Traumatic neurosis patients exhibit a fear of permanent disability, Maloy, Nervous and Mental Diseases, p. 313, or, as described by Dr. Smith in this case, it is a neurosis that results from the workman who receives an injury being fearful that if he goes back to the same work he will receive another such injury. We have said that traumatic neurosis is compensable, Gonzales v. Gackle Drilling Co., 70 N.M. 131, 371 P.2d 605, but even as

to traumatic neurosis the Washington Supreme Court in Mickelson v. Fischer, 81 Wash. 423, 142 P. 1160, said: "An allowance of damages in cases of traumatic neurasthenia touches the border of speculation at best * * *."

Compensation neurosis, on the contrary, is not directly produced by either physical injury or mental shock. 44 Mich.L.Rev. 717, and is not a functional disability caused by injury except on the basis of the "but for" reasoning as in the sense illustrated by the old cliche: "For want of a nail, the shoe was lost; for want of a shoe, the horse was lost; for want of a horse, the rider was lost; for want of a rider, the battle was lost, etc." Thus, as was said in 11 Defense L. Journal 203, by Warren L. Hanna (referee of California Industrial Accident Comm.; author of a two-volume text, "The Law of Employee Injuries and Workmen's Compensation"; editor of "The Workmen's Compensation Laws of California"):

> " * * * the person who is looking for an antecedent 'cause,' rather than the immediate or proximate cause, can conclude that the cause of losing the war was the want of a nail, and that a neurosis was caused by trauma."

See, also, 3 Lawyers' Medical Cyclopedia, § 20.2. Thus, the injury is merely a condition precedent, or a starting point, rather than a cause. The relationship between the neurosis and the injury is chronological

rather than causal. It is merely "a convenient peg upon which one hangs a hat."

The term "sinistrosis" is often used to describe the obsession by which a workmen's compensation claimant is imbued with the idea that every accident constitutes an injury for which the fullest indemnity must be claimed and obtained. These individuals having "compensation neurosis" or "anxiety neurosis" are said to be so preoccupied with their imaginary ills that they become subjects of an obsession which is itself a disease. This, Keschner (M.D., L.L.B., Clinical Professor of Neurology, Columbia University) 44 Mich.L.Rev. 715–16, says must not be confused with traumatic neurasthenia or traumatic neurosis. Dr. Smith was asked: "Traumatic neurosis then and compensation neurosis are they interchangeable?"—to which he answered:

"NO. Traumatic neurosis is a different sort of thing, it is more on the basis of someone who has received—well in the more severe ones more like a person receiving several injuries over a period of years. They are getting up in years in an occupation in which does have some hazards to it and because of these increasing illnesses I mean increasing injuries, they are fearful on an unconscious level that they will receive more. I think all of us as we grow older are more fearful of physical injury."

In the case of compensation neurosis, the injury has merely switched the preoccupation of the personal problems of such person to a different focal point. Such a neurosis has been described as an escape mechanism, developed in many cases as a defense against unpleasant work, an intolerable family life, or other personal problems. See 3 Lawyers' Medical Cyclopedia, § 20.2; 30 Virginia L.Rev. 87; 2 Gray, Attorneys' Textbook of Medicine (3d Ed.) 1095. Warren L. Hanna compared a person with compensation neurosis to a child who develops a stomach-ache to avoid going to school; an inadequate person realizing his deficiencies, rebelling against the exigencies of earning a living. It is a situation where any injury offers an excuse for a paid vacation. The claimant in this case feared that his divorced wife would reclaim their children from his custody.

Dr. Smith, testifying in this case, defined "compensation neurosis" as "an unconscious motivation because of all these insurance settlements and the trauma of our time. There is unconscious motivation for monetary awards for an injury." As it is often expressed, the claimant suffers from compensationitis and is subject to an effective cure by application of a "greenback poultice." The treatment for traumatic neurosis and compensation neurosis is entirely different. In most cases, the treatment for traumatic neurosis is to retrain the workman for a different type of work so that he will not be subject to the hazards which caused his injury. The treatment for "compensa-

tion neurosis," on the contrary, according to the testimony of Dr. Smith, is settlement of the workman's compensation claim by the payment of money. He said: "Now, true compensation neurosis as soon as they receive a settlement they will be able to go back to work." Dr. Smith further explained the neurosis as:

"Well, I mean, in our time if people read about being hurt on the job and attaining large settlements then it seems to me quite natural for some person who is having a hard time of making a go of it to almost automatically set into an injury a certain amount of factors of wanting compensation for their injury. Everybody else gets it so naturally they are going to want it."

The only case relied upon by the majority or cited by Larson actually allowing compensation for "anxiety" or "compensation neurosis" is Hood v. Texas Indemnity Ins. Co., 146 Tex. 522, 209 S.W.2d 345, which was decided by a divided court, four to three, with a strong three-judge dissent. The reasoning of the Texas court is not persuasive to me. The basis of the majority Texas opinion appears to be merely that the workman was unable to work, then why should he not be compensated. That court even said that the reasoning in a case involving a judgment in tort for personal injuries was applicable and decisive. The basis of the majority opinion in the Texas

case, I think, is illustrated by the later decision of that court in Bailey v. American Gen. Ins. Co., 154 Tex. 430, 279 S.W.2d 315, where compensation was allowed a workman who suffered neurosis as a result of watching a scaffold fall with another workman, even though the claimant was not involved in any accident.

In Kowalski v. New York, N. H. & H. R. Co., 116 Conn. 229, 164 A. 653, 86 A.L.R. 957, the neurosis caused by anxiety over pending litigation and uncertainty of continuance of payments was held to be an independent cause and not compensable. I do not push it aside merely because the condition is mental rather than physical, but as I view the matter, compensation neurosis, or, as may psychiatrists and authors term it, "desire neurosis" is clearly an independent cause and not compensable under our statute. I have no quarrel with the theory that compensation neurosis is a disease. However, I think the appeal should be to the legislature to make it compensable as it did certain occupational diseases.

I cannot agree with the majority that (1) the testimony of Dr. Lowery must be disregarded, or (2) that the testimony of Dr. Smith is conclusive in establishing the causal connection between the claimed disability and the accident as a medical probability. It is well established that § 59–10–13.3, N.M.S.A.1953, requires the claimant, as a condition to recovery, to affirmatively

establish the causal connection between the accident and the claimed disability as a medical probability.

The majority arrive at the conclusion that the required causal connection has been established by the uncontroverted testimony of Dr. Smith; that the trial court was under a duty to so find; that such fact is binding on this court; and that on appeal this court will either supply that fact or direct the trial court to so find. This court has no right to make such a determination. Even if it be assumed for the moment, for this argument alone, that Dr. Smith's testimony stands uncontradicted, Montano v. Saavedra, 70 N.M. 332, 373 P.2d 824, is controlling on the question of the opinion testimony of a medical expert as to causal connection between the accident and disability, when it said:

"* * * The testimony of the doctor concerning whether the injury caused the disability was opinion testimony and as such was not conclusive, and the trier of the facts could accept, reject or give such weight only as it deemed the same entitled to have, even though uncontradicted. * * *"

See, also, Teal v. Potash Company of America, 60 N.M. 409, 292 P.2d 99; State v. Moore, 42 N.M. 135, 76 P.2d 19; Jamison v. Shelton, 35 N.M. 34, 289 P. 593. The trial court, in refusing claimant's tendered finding of causal connection, determined that issue against the claimant.

In my view, a mere reading of Montano v. Saavedra, supra, and Renfro v. San Juan Hospital, Inc., 75 N.M. 235, 403 P.2d 681, discloses that the rule announced in those decisions to the effect that opinion testimony as such is not conclusive, even, when not contradicted, was clearly not dicta in either case. In Saavedra the decision turned on whether a finding by the trial court that causal connection had not been established was supported in view of the medical opinion to the contrary. The majority have clearly recognized and reaffirmed the rule of Jamison v. Shelton, supra, in which this court expressly declared expert opinion to be merely opinion evidence and not conclusive even when uncontradicted. The majority do not contend that the identical Saavedra and Renfro rule was dicta in Jamison. I find no valid distinction between the opinion evidence said not to be conclusive in Jamison and that of Dr. Smith in the instant case. The majority seem to be clearly inconsistent in reaffirming the opinion rule of Jamison and in the same breath establishing a contrary rule here.

It is well established that the fact finder is entitled to draw all reasonable inferences flowing from the evidence and that this court on appeal must likewise indulge all reasonable inferences in support of the trial court's findings and in support of the judgment, and must disregard all evidence and inferences to the contrary. Maryland

Cas. Co. v. Jolly, 67 N.M. 101, 352 P.2d 1013; Mountain States Aviation, Inc. v. Montgomery, 70 N.M. 129, 371 P.2d 604; Cochran v. Gordon, 69 N.M. 346, 367 P.2d 526. Likewise, the trier of the facts must determine the credibility of the witness, reconcile inconsistent statements of the witness, and say where the truth lies. Banes Agency v. Chino, 60 N.M. 297, 291 P.2d 328; Zengerle v. Commonwealth Insurance Co. of New York, 63 N.M. 454, 321 P.2d 636; Luna v. Flores, 64 N.M. 312, 328 P.2d 82.

It is clear that Dr. Smith, whose medical testimony is wholly relied upon by the majority, subscribes to the "but for" reasoning *in reaching a causal connection between the* claimant's desire for compensation and an accidental injury. The majority point to his testimony when questioned as to whether the injury caused the compensation neurosis and quote Dr. Smith as saying:

"\* \* \* In other words, you can't have a traumatic neurosis or compensation neurosis without having something to develop and precipitate the traumatic neurosis or precipitate something to develop or *give someone motivation compensation.*"

What Dr. Smith was saying was that there can be no recovery under the Workmen's Compensation Statute without an antecedent accidental injury, and that in the sense that such an injury is necessary as a pre-requisite to recovery, there is a causal connection between the two. In other words, "but for" the antecedent injury, there could of course be no basis for compensation payments. I think that under applicable rules, the trial court could reasonably draw such an inference from the testimony and conclude that even accepting the testimony of Dr. Smith, there had nevertheless not been the requisite proof of causal connection as a matter of law.

It is equally well established that the facts found by the trial court are the facts upon which the case rests in an appellate court, and based upon the applicable rules, I think the majority are wrong in determining the facts. This court has *no right to* determine, contrary to that made by the trial court, that causal connection has been established as a medical probability. The trial court having determined that the claimant failed to carry his burden of establishing the required causal connection, this court is bound thereby and must affirm the judgment appealed from.

Dr. Lowery testified that if the claimant was a well-adjusted individual prior to the injury on July 4th, he would question whether this injury "could have precipitated such an episode;" that if claimant was, at the time of the accident, having a considerable emotional difficulty, the accident could possibly have triggered the blackout condition. In answer to a question of "whether

it is a reasonable probability from your training and experience that he is now disabled from the trauma or injury," he answered, "I can't say that it is a probability because I don't know what Mr. Ross was like before." Considering the testimony of Dr. Lowery as a whole, together with the expression of medical textwriters on the subject, I think the trial court might well have concluded that the doctor was using the word "I" in the sense of "we" or "a doctor." He had just explained that it was necessary to know the patient's emotional condition prior to the accident to reach a medical conclusion as to the causal connection. The textwriters support that statement of Dr. Lowery. 3 Lawyers' Medical Cyclopedia, § 20.18, and the statement, 30 Va.L.Rev. 87 at 90:

> " * * * it is necessary in our opinion to take into account the pre-traumatic personality for the purpose of discovering what part of the total injury really represents a pre-existing neurotic constitution merely expressing itself by more obvious symptoms in response to stimuli which would cause no such symptoms in a normally constituted person. * * *"

The trial court might well have drawn a reasonable inference from Dr. Lowery's testimony that it was his opinion that knowledge of the patient's prior condition was necessary to enable *a doctor* to express an opinion as to causal connection—not that Dr. Lowery could not do so but that in his opinion no doctor could express such an opinion without such knowledge of prior conditions. Such an inference only bolsters the court's denial of the tendered finding on causal connection and his rejection of Dr. Smith's opinion respecting such causal connection. The trial court had a right to construe testimony, resolve conflicts, evaluate it and to draw therefrom all reasonable inferences.

I know of no rule which permits an appellate court, after determining that a finding lacks support, to itself make the requisite finding or direct the court as to a particular finding to be made, as was done by the majority in directing the trial court to accept the tendered finding that traumatic neurosis and compensation neurosis had rendered the claimant totally disabled. I think there is no medical testimony to support such a direction by this court. Dr. Smith, in answer to a question as to what future therapy he proposed, answered:

> "Well, if I were going to make a final decision in the case, I would want to the man in the hospital and observe by myself for a more prolonged period of time to arrive at what percentage of disability the traumatic—of what percentage—and what per cent I felt was purely compensation."

Both, upon the ground that the trial court had a right to conclude that claimant failed to carry his burden of establishing a causal

connection between the accident and the claimed disability and that compensation neurosis or desire neurosis is not compensable under New Mexico's Workmen's Compensation Law, I dissent from the majority.